## HOBBY vs. DANA, receiver, &c.

A statement in an application for insurance, that the building in which the property to be insured is situated is *occupied as a tavern barn*, is a *representation* that the same is so occupied.

By the terms of a policy of insurance, upon property in a tavern barn, the loss or damage was to be paid only after due notice and proof thereof, made by the insured, in conformity to the by-laws and conditions annexed to the policy. It was also agreed, and the policy was made and accepted, subject to and in reference to the terms, by-laws and conditions of the company, which were to be used and resorted to, to explain and ascertain the rights of the parties. One of the conditions annexed to the policy provided that, as a part of the preliminary proofs, there should be a statement that there had been no *alteration* or *occupation* of the premises which *increased the hazard of the property*. HELD, that the terms of the policy, in connection with the terms of the condition, controlled the construction of the contract of insurance, and bound the insured by an agreement that the premises should not *be occupied so as to increase the risk*, after the insurance was effected.

*Held also*, that an occupation of the barn for the purpose of keeping a *livery stable* therein, was such a change in the use of the premises as to materially increase the risk, and to require notice to be given to the insurers. And that the fact that the person keeping a livery stable in such barn was only a tenant at will, and subject to be removed at the pleasure of the insured, was immaterial.

A person engaged in the business of insurance, and in the habit of examining all kinds of hazards, and affixing the rates which they should pay for insurance, may be allowed to give his opinion upon the questions whether a livery stable is more exposed to conflagration, and a more hazardous risk, than a tavern barn; and whether, according to the usage and custom of insurance companies, it is worth more to insure a livery stable than a tavern barn.

MOTION to set aside a report of referees. A claim having been made by Hobby, as assignee of a policy of insurance, against Dana, as receiver of the Utica Insurance Company, an insolvent corporation, the controversy was under the provisions of the revised statutes, (2 *R. S.* 712, § 83, 4*th ed.*) referred to three referees to determine the same. The referees found and reported the following facts: That on the 18th day of May, 1850, the Utica Insurance Company issued a policy of insurance to Jonas S. Seaman, of Utica, insuring him against loss or damage by fire to the amount of $600, on certain property described in said policy, consisting of horses, carriages, hay and grain, &c.

Hobby *v.* Dana.

kept in a certain barn on Carnahan-street, in the city of Utica. That such insurance was for one year from the said 18th day of May, 1849; that on the 25th day of February, 1851, the said property was totally destroyed by fire, and that the property insured and embraced in the policy, and which was destroyed by fire, was of the value of $600. That due notice of the loss was given to the company the morning after the fire occurred, and that on the 3d day of March, 1851, the usual preliminary proofs of such loss, and the extent thereof, were duly served upon said insurance company, and payment demanded; that such loss was not then and has not since been paid. That on the 1st day of September, 1851, Seaman, for a valuable consideration, assigned the said claim against the company to the said William A. Hobby, who prosecutes the same in this proceeding, and that he was the legal owner thereof. That in the month of October or November, 1850, and during the lifetime of the said policy, the said Seaman permitted one William C. Marsh to occupy the said barn, by keeping from six to eight horses therein, which he was in the habit of letting for compensation, as opportunity offered. That the said premises were used by said Marsh, as a livery stable, from the time he was permitted to enter, in October or November, to the time of the fire, except that he kept no office on the premises, and had no fire and no sleeping apartment therein. That at the time the insurance was effected, Mr. Clark, an agent of the company, boarded with Mr. Seaman, and kept a horse in the same barn, and examined the premises himself with reference to the application to insure, and that at that time the premises were occupied by said Seaman as a tavern barn, he being a tavern-keeper; and at the same time one Mr. Shaver occupied the same premises, with three horses, &c. That Mr. Shaver's horses left the premises in June, after the insurance was effected, and before Mr. Marsh's horses were taken in. That said Marsh's occupation was by permission, and temporary only; there being no agreement as to the time and compensation, and Seaman had the right to turn him out when he pleased; and Marsh's occupation was not in any manner to interfere with Seaman's right to occupy the whole barn as a

Hobby *v.* Dana.

tavern barn, and the said Seaman retained the absolute and entire control of the whole barn. In respect to the occupancy by Mr. Marsh, a majority of the referees found that it was not such a change in the use of the premises insured as materially increased the risk; that no notice to the company of such occupation was necessary, and that the validity of the policy was not affected thereby. They therefore reported in favor of Hobby for the amount insured, with interest.

On the trial before the referees, John Browne was examined, as a witness by the defendant, and testified as follows: "I am secretary of the Globe Insurance Company, and agent of some foreign insurance companies. · I am in the habit of examining all kinds of hazards with a view to determine their exposure to conflagration, and affixing the rates which they should pay for insurance: all hazards having in themselves some points regulating the amount of premium. A livery stable has attached to it a number of careless hands; it is visited at all hours of the night; lights are kept up; and the hands are generally men of bad habits. Tavern barns are kept under the control of one man, with one hand light, and are usually closed at an early hour in the evening, and are seldom used as sleeping apartments." He was asked this question, "Is a livery stable more exposed to conflagration and a more hazardous risk than a tavern barn?" This question was objected to by claimant, on the ground that it called for the opinion of the witness, and was excluded by the referees: to which ruling the defendant excepted. The witness was also asked this question, "Is it worth more to insure a livery stable than a tavern barn, according to the usage and custom of insurance companies?" The claimant interposed the same objection to this question, and the same was accordingly excluded by the referees: to which ruling the defendant excepted.

*M. H. Throop*, for the receiver.

*J. Benedict*, for the claimant.

Hobby *v.* Dana.

*By the Court,* GRIDLEY, J.   This is a proceeding to review the report of referees appointed under the statute respecting claims against insolvent corporations. The claim itself was made on a policy of insurance executed to one Jonas S. Seaman, for the sum of six hundred dollars, on "his *hay and grain,* live stock, &c. carriages, &c. described in the application as situated in a barn on Carnahan-street in the city of Utica, *occupied by the applicant as a tavern barn.*" By the terms of the policy, the loss or damage is to be paid only "after due notice and proof thereof *made by the insured in conformity to the by-laws and conditions annexed to the policy.*" The policy also states, "that it is also agreed and understood, and this policy is *made and accepted* subject to and in reference to *the terms,* by-laws and conditions of the company, which are to be *used and resorted to, to explain and ascertain the rights and liabilities* of the parties hereto, in all cases not herein otherwise provided for." One of the conditions annexed to the policy, among other things provides that, as a part of the preliminary proofs served on the company and verified by affidavit, there shall be a statement "that there has been no *alteration, or occupation of said premises* (not assented to by the company) *which increased the hazard of said property, since the insurance was effected.*" This provision applies expressly to property in a building, as well as to the building itself.

The statement in the application that the building in which the insured property was situated was *occupied as a tavern barn,* is a *representation* that the same *was so occupied.* (7 *Wend.* 72.   2 *Hall's S. C. Rep.* 539, *and cases cited by counsel,* 16 *Wend.* 485.) The terms of the policy above recited, in connection with the terms of the condition above referred to, control the construction of the contract of insurance, and bind the insured by an agreement that the premises should not *be occupied so as to increase the risk, after the insurance.* Such are the *rights and obligations* of the parties, by the plain language of the instrument on which the plaintiff seeks to recover.

This will lead us to examine the finding of the referees. They find that one Marsh was allowed to keep a livery stable in the

Hobby *v.* Dana.

barn where the property was situated. But the majority of the referees also find that an occupancy for this purpose was not such a change in the use of the premises as to materially increase the risk; and that no notice of such change was necessary to be given to the company. And this decision was placed on the ground that the occupation of Marsh was not to interfere with the right of Seaman to occupy the whole barn as a tavern barn; and that Seaman had a right to turn him out whenever he pleased. Nevertheless, a livery stable was kept there for about *five months,* and was so kept at the time of the fire; and in the absence of proof, it may be quite as likely that the fire caught by means of the carelessness of the servants belonging to the livery stable, as of those belonging to the tavern. If the fact that Marsh was subject to go out whenever Seaman should so determine, were to exempt the policy from the effect of a more hazardous use of the premises, it will readily be seen that it is in the option and power of the insured to permit the premises to be occupied for the most hazardous occupation, during the entire period of the insurance, with impunity. Such a construction of the rights of the parties would defeat a plain provision by which the rights of the insurers were guarded by the agreement of both parties to the instrument. The rule mentioned by the referees, referred to a temporary and casual use of the premises, and not to a continuing use of them for a purpose clearly prohibited by the policy. (*O'Niel* v. *The Buffalo Fire Ins. Co.,* 3 *Comst.* 122.) In that case the depositing of oils and paints during the temporary repair of the premises, was held not to be an occupation that rendered the policy void.

Marsh kept a livery stable with six or eight horses secured by halters; and he kept no office or stove in the barn; yet he had two men besides himself, who went into the barn at all hours of the night, as late as two or three o'clock in the morning, as became necessary in the business of letting his horses and carriages and sleighs for evening parties; when they returned at late hours:

Now there was positive proof that this use of the barn was material to the risk. Mr. Hart swears that the rate of premium

was two cents and an half, and that of tavern barns was two per cent. To the same point was the testimony of John Brown and J. W. Williams, both experienced insurance agents. We are therefore of opinion that the majority of the referees erred in holding that the keeping of this livery stable on the premises was not such a change in the use of the premises as materially increased the risk. And they erred also, in holding that the fact that Marsh was only a tenant at will and subject to be removed at the pleasure of Seaman, prevented his use of the premises being in law an occupation that rendered the policy void. In fact it seems to be admitted by the referees that this feature in the case alone prevented the occupation being a bar to the recovery.

We also think the questions put to the witness Brown, and rejected, should have been answered. Such is the established rule in England and in Massachusetts, and we think it should be followed; though we do not place our decision on this ground.

New trial granted.

[ONONDAGA GENERAL TERM, October 3, 1853. *Gridley, W. F. Allen, Hubbard* and *Pratt*, Justices.]