LEWIS WILLIAMS, Respondent, *v*. THE PEOPLE'S FIRE INSUR-
ANCE COMPANY, Appellant.

Where, upon a trial, evidence is given presenting a defence not set up in
the answer, and the question is litigated without objection, the defend-
ant is entitled to the benefit thereof the same as if it had been regularly
pleaded.

A policy of insurance upon a quantity of merchandise contained a condi-
tion that if the risk should be increased, by any means whatever within
the control of the assured, the policy should be void. In an action upon
the policy it appeared that the assured, for several months before the
fire, kept, in the room where the merchandise was, a jug containing crude
petroleum which he used himself for medicinal purposes. It also
appeared that the petroleum was not the cause of and had nothing to do
with the fire, but evidence was given tending to show that its presence
was dangerous and tended to increase the risk. The court refused to
charge that if the use of the petroleum increased the risk the plaintiff
could not recover. *Held*, error, that it was a question of fact for the jury
whether the risk was actually and materially increased, and if so it
avoided the policy.

Another condition of the policy prohibited the keeping of petroleum for
sale or storage, or its use for lighting, except by permission. *Held*, that
while this condition did not prohibit the keeping for the purpose for
which the petroleum was used, it did not permit it, if, thereby, the risk
was increased, and did not, in any way, affect the condition upon that
subject.

The policy also contained a clause authorizing the company, in case the
premises should be occupied or used so as to increase the risk, to term-
inate the insurance upon notice and return of the unearned premium.
*Held*, that this condition was intended to provide for increase of risk
by the acts of third persons over whom the insured had no control and
did not affect the clause providing against increase of risk by act of the
insured.

The authorities as to effect of clause against increase of risk collated by
DWIGHT, C.

(Argued January 9, 1874; decided May term, 1874.)

APPEAL from judgment of the General Term of the
Supreme Court, in the first judicial department, affirming a
judgment in favor of plaintiff, rendered upon a verdict.

This action was brought upon a policy of fire insurance
issued by defendant. The insurance was upon certain mer-

chandise contained in a room of a building in the city of New York, used by plaintiff both as a salesroom and sleeping-room. The merchandise was destroyed by fire on the 31st day of January, 1868. There was a condition annexed to the policy that "if the risk shall be increased by any means whatever within the control of the assured" the insurance shall be void. The policy also contained these conditions: "The sale or storage of crude or refined coal oil or petroleum, earth or rock oil, including kerosene, naphtha, benzine or other volatile products, is prohibited within the premises covered by this policy, except by written permission indorsed hereon."

"If the above mentioned premises shall, during this insurance, be occupied or used so as to increase the risk, or by the erection of any building or buildings, or by the use or occupation of neighboring premises, this company, after notice given to the assured, or his, her, or their representative, of their intention to terminate the insurance, will refund a ratable proportion of the premium."

During several months before the fire the plaintiff kept in his store a jug containing from two to six quarts of crude petroleum with which he habitually bathed his person and then dried it in before a fire for medicinal purposes. It was clearly proved that this petroleum, and the use of it, had nothing whatever to do with the fire. The jug with the petroleum was found there, after the fire, uninjured and unconsumed. But the defendant gave evidence tending to show that the presence of this petroleum was dangerous, tended to increase the risk, and would, if known, have enhanced the premium charged for the insurance. This evidence was received without objection. The answer did not set up any defence of forfeiture of the insurance under this condition in the policy. The counsel for defendant requested the court to charge that if they believed that the use of the petroleum increased the risk, the plaintiff could not recover; this the court declined to do and defendant's counsel excepted. Counsel for defendant then asked the court to submit the question

to the jury as to whether there has been a violation of the policy in respect to increasing the risk, which the court declined to do, and the defendant's counsel excepted. Further facts appear in the opinion.

*Samuel Hand* for the appellant. Insurers may insert in their contracts of insurance such terms and conditions as they think fit, and they cannot be made liable outside of the terms of the contract they had made. (*Savage* v. *How. Ins. Co.*, 52 N. Y., 505.) The evidence as to increase of risk having been given without objection defendant has a right to raise the question on appeal. (*N. Y. Cent. Ins. Co.* v. *Nat. Pro. Ins. Co.*, 14 N. Y., 89, 90; *Balcom* v. *Woodruff*, 7 Barb., 13; *Hanover* v. *Heath*, 19 id., 331; *Cady* v. *Allen*, 22 id., 388; *Clark* v. *Dales*, 20 id., 42; *Foote* v. *White*, 7 Rob., 17; *Bowdoin* v. *Coleman*, 3 Abb., 431.)

*Jno. E. Parsons* for the respondent. The presence of the kerosene or crude oil did not constitute an occupation or use of the premises. (*O'Neill* v. *Buff. F. Ins. Co.*, 3 Comst., 122; *Townsend* v. *N. W. Ins. Co.*, 18 N. Y., 168; *Hynds* v. *Schen. Co. M. Ins. Co.*, 16 Barb., 119; affirmed, 1 Kern., 554; *Mayor, etc., of N. Y.* v. *Ham. Ins. Co.*, 18 Bosw., 557; affirmed, 39 N. Y., 45; *Mayor, etc., of N. Y.* v. *Ex. F. Ins. Co.*, 9 Bosw., 424; affirmed, 3 Keyes, 436; *Moore* v. *Pro. Ins. Co.*, 29 Me., 97; *Dobson* v. *Sotheby*, 1 M. & W., 90; *Shaw* v. *Roberts*, 6 A. & E., 75; *Gainwell* v. *M. and F. M. F. Ins. Co.*, 12 Cush., 167; *Leggett* v. *Ætna Ins. Co.*, 10 Rich. [S. C.], 202.) It was proper to refuse to entertain the defences not pleaded in the answer. (*Hunt* v. *H. R. F. Ins. Co.*, 2 Duer, 481; *Dimon* v. *Dunn*, 15 N. Y., 498; *Wright* v. *Delafield*, 25 id., 266.)

EARL, C. If the presence of the petroleum in the room where the insured property was, had been only casual or temporary, for some use connected with the store or the merchandise therein, or the occupants thereof, it would probably

not have increased the risk within the meaning of the policy. But here it was kept permanently for five or six months. If it had been part of the merchandise insured, or if its presence had been expressly permitted by the policy, it could not be said to have violated the condition. The sale or storage of petroleum and its use for lighting the store, were expressly prohibited unless there was permission, indorsed in writing upon the policy. This prohibition was not violated, because it was not kept in the store for any of these purposes. This petroleum was not, therefore, expressly permitted or prohibited, and the sole question is, whether its presence increased the risk and thus violated the policy. This question cannot be determined as a matter of law by the fact that the quantity was so small. If plaintiff had kept a whole barrel there, or a tank full for the same purpose, however much it might have increased the risk, he would not have violated any express prohibition in the policy. In such case the defendant would have a right to complain, only in case the risk were increased. In every case, it must be a question of fact for the jury to determine upon the evidence, no matter how small or how large the quantity may be, whether it actually and materially increased the risk. It would be of little use for the insurance company to expressly prohibit the sale or storage, or the use of petroleum for lighting, if it could be kept on the premises for other purposes, in just as large quantities, and with just as much danger without avoiding the policy. It can make no difference, that this small quantity of petroleum did not actually contribute to the fire. If its nature was such as to increase the risk, it avoided the policy. (*Mead* v. *The Northwestern Insurance Co.*, 7 N. Y., 530.) To test this case, suppose the petroleum not only increased the risk, but had actually caused the fire, it would, then, certainly have been very unjust to have held the defendant liable for the loss. I am, therefore, of opinion, that the judge erred in not submitting the evidence upon this question to the jury, and in refusing to charge as requested. It may be, that the jury would have found, in consideration of the fact

of the small quantity of petroleum, and of the fact that although present it did not ignite or contribute to the fire, that it did not materially increase the risk. But, however this may be, it was their province, and not that of the judge, to determine this question.

The learned counsel for the plaintiff has called our attention to the case of *Townsend* v. *Northwestern Insurance Co.* (18 N. Y., 168), as in conflict with these views. That was a case of insurance against fire, under a policy containing a condition like the one under consideration here, upon a cotton factory, in which, at the time of the insurance, there was a forcing pump, designed to be used as a protection against fire, worked by a water wheel. The insured, during several days, for the purpose of repairing the factory, cut off the supply of water and thus disabled the pump, and, during this time, the fire occurred. The court held, that the risk, incident to the making of necessary repairs, was assumed by the insurers in the absence of any stipulation to the contrary in the policy. But, if in that case, the insured had permanently disabled or removed the pump, for a purpose not impliedly or expressly permitted in the policy, it cannot be doubted that the court would have held the policy avoided. That case, therefore, is in perfect harmony with the views above expressed.

It is claimed, that this defence was not set up in the answer, and, hence, that it cannot be allowed to avail the defendant here. It is true that it was not set up, but witnesses were called to sustain it, and it was litigated upon the trial without any objection to the form or sufficiency of the answer. Evidence was given without objection, on both sides, as to this defence, which was not pertinent to any defence set up, or any issue made by the pleadings. Hence, within the principles laid down in the case of *Williams* v. *Mechanics and Traders' Fire Insurance Company*,[\*] decided at the last term of the Commission, and cases there referred to, the defendant must have the benefit of the defence as if it had been regularly set up.

[\*] 54 N. Y., 577.

I have examined the other objections made by defendant to plaintiff's recovery, and find none of them well taken. The judgment, for the reason above stated, must be reversed, and new trial granted, costs to abide event.

DWIGHT, C. The only point which it will be necessary to consider, in the present case, is, whether the judge at the trial erred in refusing to submit to the jury the question, whether there had been a violation of the conditions of the insurance policy, insuring the plaintiff's goods, by reason of an increase of the risk, owing to the plaintiff's own act.

The condition in the policy, which is claimed by the defendant to have been violated by the plaintiff, is as follows: "If, after insurance has been effected, either by the original policy or the renewal thereof, the *risk shall be increased* by any means whatever within the control of the assured, or if such building or premises shall be occupied in any way, so as to render the risk more hazardous than at the time of insuring, such insurance shall be void and of no effect."

The facts of the case, so far as it is necessary to detail them, as bearing on an alleged increase of risk, show that the property insured was merchandise, contained in a brick building, known as 307 Broadway, in the city of New York. The goods were in a room in the third story. The plaintiff used the room for the purposes of his business, and also as a sleeping-room. Its dimensions were thirteen feet, by six feet eight inches. There was a stove in the room, in which fires were kindled from time to time. The plaintiff kept in this room a jug of crude petroleum. It stood on a shelf eight or ten feet from the stove, and would hold a gallon or more. The petroleum was used for medicinal purposes, and, in particular, to cure an eruption of the skin. When he used the petroleum he would stand naked before the fire in the stove, and rub himself with the oil. He had done this from time to time, for five or six months before the fire. The shirt and drawers which he wore, after making the application, having

become saturated with the petroleum, he cast into a box in the room, having a lid upon it. He had worn articles of this kind two nights before the fire. He had made an application of the petroleum to his person on the afternoon of January 30, 1868, and left his place at five o'clock in the afternoon. On this occasion he had rubbed the oil upon his person before the fire in the stove, as usual. The merchandise was found to be on fire on the morning of January 31, at two and a half o'clock. The petroleum jug contained at the time about two quarts of the oil, and was standing on the shelf without a cork. The flames did not set the oil on fire. The saturated clothing was not burned or injured. The unburned goods were thrown together in a pile after the fire. There was found in the mass, besides the clothing referred to, some balls saturated with turpentine or kerosene, and there was a strong smell of those substances in the room. There was evidence given by a refiner and dealer in petroleum oils, and who gave testimony as an expert, that crude oil was highly dangerous, and apt to give off, by evaporation, volatile gases which would readily take fire. He stated that there was no comparison, as to danger, between the crude and the volatile oil. He declared that it was dangerous to strike a match in a close room, owing to the presence of the gases and their liability to take fire. He added, that the danger would be much increased by the presence of garments saturated with the oil, as there would be more surface exposed for evaporation, and that, in his view, there was danger from the circumstances of the present case. Other experts, called by the plaintiff, wholly contradicted this view. It appeared that the defendant did not know of the use of the petroleum, and did not take risks where petroleum was used, except at very high rates. It belonged to the class of prohibited, or at the least to specially hazardous articles. Under these facts, the question should have been left to the jury, whether the acts of the plaintiff had not "increased the risk" under the condition in the policy.

The effect of this clause has been frequently considered by

the courts. It differs from that class of conditions which refer to a state of things existing at the time of the execution of the policy. It looks wholly to the future, and solely concerns the conduct of the assured. It binds him to a rigorous course of conduct as to the observance of existing precautions and the introduction of new sources of danger. The bearing of it is well stated by Chief Justice SHAW in *Houghton* v. *Manufacturers' Mutual Fire Insurance Co.* (8 Metcalf, 114, 122). The clause in that case was not precisely in form like the one now under discussion, but was substantially the same. The court said : " This provision binds the assured not only not to make any alteration or change in the structure or use of the property which will increase the risk, but prohibits them from introducing any practice or custom or mode of conducting their business, which would materially increase the risk, and also from the discontinuance of any precaution represented in the application to be adopted and practiced with a view to diminish the risk." (P. 122; May on Insurance, § 218.) The effect of the clause plainly is, that if there be any increase of risk, the plaintiff cannot recover. It is in the nature of a warranty that there shall be no material increase of the risk. (*Allen* v. *Mut. Fire Ins. Co.*, 2 Md., 111; *Mayor of N. Y.* v. *Hamilton F. Ins. Co.*, 10 Bosw., 537; *Baxendale* v. *Harvey*, 4 H. & N., 445.) Whether there is such a material increase of the risk or not, is a question for the jury. In *Stokes* v. *Cox* (1 H. & N., 320, 533), the condition was that, if, after the insurance was entered into, the risk was increased by an alteration of circumstances, notice should be given to the company and an indorsement made, otherwise the policy was to be void. The court held, that in the event of an increase of the risk, notice must be given, and that whether there was an increase of risk was a question for the jury. (P. 540; *Hobby* v. *Dana*, 17 Barb., 111; *Jennings* v. *Chenango Co. Mut. Ins. Co.*, 2 Denio, 75; *Grant* v. *Howard Fire Ins. Co.*, 5 Hill, 10; *Perry Co. Ins. Co.* v. *Stewart*, 19 Penn. St., 45.) It is urged, however, that there was a special clause in the policy concerning petroleum, and

that this covers the whole subject, and thus excludes the application of the "increase of risk" clause to the present case. That clause provides that the sale or storage of crude, or refined coal oil or petroleum, etc., is prohibited within the premises covered by the policy, except by written permission indorsed thereon. It is argued, from this form of expression, that all other forms of use except "sale or storage," are allowed. It is not pretended that this article was kept for sale, and the decisions show that the small amount of petroleum kept in the present case for the purpose indicated, is not an instance of "storage." (*Hynds* v. *Schenectady Co. Mut. Ins. Co.*, 11 N. Y., 554; May on Insurance, § 242, and cases cited.) Conceding that the true construction of this condition is to allow the act of keeping petroleum when not on sale or storage, it must still be harmonized with the condition concerning "increase of risk." The risk must not be augmented by any means whatever within the control of the assured. Taking the clauses together, the insured could not fairly claim to use petroleum actively and as an instrument to accomplish some purpose of his own, if the risk was thereby increased. A prohibition of "the sale or storage of gunpowder" would not, by implication, confer the right to fire a pistol among inflammable substances. Suppose that there was a prohibition against the sale or storage of certain chemical substances, not specially dangerous in an inert state, would that cover, by implication, the act of a chemist who should, by combining them into dangerous and explosive compounds, give them a capacity to cause mischief which they did not originally possess? This result could not be claimed, even if there was an express insurance upon such substances. Says a recent author: "A permission to keep kerosene or gunpowder for sale, it is obvious, cannot fairly be construed into a permission to manufacture or use them upon the premises, since the risks in the respective cases may widely differ." (May on Ins., § 234.)

In *Boatwright* v. *Ætna Insurance Company* (1 Strobhart [S. C.], 281), an attempt was made to restrict the meaning of

the clause against " increase of risk." The language of the condition in the policy was identical with that of the case at bar. There were in like manner, classes hazardous, extra hazardous and special. None of these included the particular act (the building of a smoke-house and using it for the smoking of meat) which was relied upon as a defence. It was urged by the plaintiff that under the maxim, *expressio unius*, etc., this act was excluded from the clause concerning " the increase of risk." The court held the contrary, and maintained that the plain object of the condition was to prevent the plaintiff's construction. "It was to avoid cavil upon the reserved legal rights of the insurers, lest those rights should be implied away and excluded by minute specifications." (Pp. 286, 287.) It was also held that the condition provided, literally, for avoiding the policy in the event of any increased hazard whatever, if introduced by the insured, and that the charge of the trial judge to the jury was correct, wherein he stated that the general words, respecting the increase of risk, were not to be considered as controlled by the preceding specifications of employments deemed hazardous. (See, also, *Perry County Insurance Co.* v. *Stewart,* 19 Penn. State, 45.) For these reasons, it must be considered that the "petroleum" clause, in the present case, does not affect the clause concerning " increase of risk."

The plaintiff further insists that the last named clause is qualified by the following provision : " If the above mentioned premises shall, during this insurance, be occupied or used so as to increase the risk, or by the occupation of neighboring premises, this company, after notice given to the assured or his or her or their representative, of their intention to terminate the insurance, will refund a ratable portion of the premium." It is claimed that in construing this clause, with the general one on " increase of risk," the result is, that on such an increase, the company may terminate the insurance by notice, and lose the unearned premium, or by withholding notice save the premium ; in which case the insurance continues binding. This construction is inadmissible. It gives no force

to the general clause concerning increase of risk by the act of the insured. If that were entirely omitted from the policy, and the clause concerning the right to reduce the premium were inserted, the company would have precisely the same right which the plaintiff insists that he should derive from both the clauses. It would necessarily follow, that, if the defendant did not avail itself of the privilege to reduce the premium, the policy would stand, and that if the reduction was made, the policy would cease. On this construction, no good reason can be given for two distinct conditions. If the second covers any more acts than the first, they would, naturally, on that supposition, be embraced in a single group of conditions by using some more general form of expression. Again, the proposed construction leaves the insured at liberty to increase the risk and still collect the insurance money, unless such increase happens to come to the knowledge of the insurer; for, in that case, alone, could notice be given. The true construction is, to hold that the two conditions are intended to meet two entirely distinct classes of cases — one, where the increase of risk is occasioned by the act of the insured, the other, where it is caused by the acts of third persons, over whom the insured has no control. In the former case the insurance policy becomes wholly void; in the latter, the insurer reserves to himself an election whether he will continue the insurance, or terminate it; at the same time, in the last event, refunding a proportional part of the premium. This view is taken of two clauses, nearly identical with those under consideration, by the Supreme Court of Massachusetts, in *Allen* v. *Massasoit Insurance Company* (99 Mass., 160).

A careful consideration of the specific words used in the two conditions will tend to strengthen these conclusions. The one condition includes misrepresentation and concealment, which are, of course, acts of the insured, as well as the increase of the risk *by any means whatever*, within his control. The other, provides for the use of the premises (meaning the building in which the goods are [3 Dutcher, 135]), the erection of new buildings, or the use or occupation of neighboring premises,

so as to increase the risk. The first is general in its nature, " by any means whatever ; " the second refers to specific acts, occupation of premises, erection of buildings, etc. It is as though the insurer had said to the insured, " your own acts, whether they be misrepresentation or concealment at the inception of the contract or subsequent conduct, of such a kind as in any manner to increase the risk, shall render the contract void. Such shall not be the effect of the acts of third persons over whom you have no control. Still we shall reserve the option as to certain acts, such as change of occupation by the owner of the premises in which your goods are situated, or the use of adjoining premises, in a manner to increase the risk, to terminate the insurance on the equitable principle of refunding the portion of the premium not yet earned." Accordingly, the clause concerning the increase of risk by the act of the insured, is a condition precedent, and if the risk has been increased, the plaintiff cannot recover. It is immaterial whether the loss was occasioned by the breach of the condition. There can be no recovery if the condition has been broken, though the fire may have been occasioned by some wholly independent cause. (Flanders on Fire Ins., 487, and cases cited ; *Gardiner* v. *Piscataquais Mutual Fire Ins. Co.*, 38 Me., 439.)

The only question that can be litigated under the condition is, has the risk been in fact increased. That question should have been submitted to the jury. As the judgment should be reversed for this error, it is unnecessary to consider the other points discussed upon the argument.

All concur.

Judgment reversed.