## PEET v. DAKOTA FIRE & MARINE INS. CO.

1. If the proof of a fact is so preponderating that a verdict against it would be set aside by the court as contrary to evidence, then it is the duty of the court to direct a verdict in favor of the party having this preponderance.

2. When there are defects in the proofs of loss, whether formal, substantial, or, indeed, in any respect, which could have been supplied if specific objections had been made thereto by the underwriters, a failure on their part to object to the proofs on that ground, or to point out the specific defect, or call for information omitted within a reasonable time, is considered a waiver, however defective, informal, or insufficient such proofs may be.

3. If it is essential for an underwriter to know by what title the insured holds the property insured, that inquiry should be made at the time of issuing the policy, and not deferred until after a loss has occurred.

4. When ownership of the property is one of the issues for determination, if there is any evidence that is disputed or contradictory, it is the province of the jury, and not the court, to settle that fact.

5. Whenever there has been a change of occupancy or of business, or the erection of additional building adjoining or near by the insured property, the question whether there has been a material increase in the risk, or not, is a question of fact, to be determined by the jury; but whether an increase of risk avoids the liability of the insurer is a question of law for the court.

(Syllabus by the court. Argued April 12, 1890. Opinion filed Jan. 5, 1891.)

Appeal from district court, Davison county. Hon. BARTLETT TRIPP, Judge.

The facts so far as material are stated in the opinion.

*Dillon & Preston* for appellant.

The machinery and fixtures insured, together with the building, constituted a part of the real estate upon which they were situated. McNally v. Connolly, 11 Pac. 320; Morris' Appeal, 88 Pa. St. 368; Loan Co. v. Machine Works, 29 N. W. 349; Bliss v. Whitney. 9 Allen 114; Rowand v. Anderson, 6 Pac. 255; Deane v. Hutchinson, 2 At. 492; Smith v. Waggoner, 50 Wis. 155; Pierce v. George, 108 Mass 78; Winslow v. Ins. Co., 4 Met. 306; Brenman v. Whittaker, 15 O. St. 446; Voorhees v. McGinnis, 48 N. Y., 278; Fratt v. Whitter, 58 Cal. 126; Smyth v. Sturges, 108 N. Y., 495; Fay v. Muzzey, 13 Gray 53; Parsons v. Copeland, 38 Me. 537; Myrick v. Bill, 17 N. W. 268.

The defendant had a right to presume that these improvements were permanent and a part of the realty, and that no secret or private agreement existed for their removal; and that the owner was also the owner of the land and not the owner of a mere leasehold interest therein. The facts being otherwise avoids the policy. Madigan v. McCarthy, 108 Mass. 376; Mers v. Ins. Co., 8 Ins. Law J. 508.

The assignment of the lease by plaintiff avoided the policy. Baldwin v. Ins. Co., 10 Ins. Law J. 433; Langdon v. Ins. Co., 22 Minn. 193; Melville v. Adams, 13 Ins. Law J. 435; Wood on Ins., § 311.

The court erred in directing a verdict. The questions of ownership of the premises, subleasing of the premises, and as

to whether the objections of defendant to the proofs of loss were made within a reasonable time, were for the jury. Thomp. on Trials, § 1037; Williams v. Railroad, 14 N. W. 97; Mears v. Railroad. 21 N. W. 5; Railroad v. Stout, 17 Wall 663; Wood on Ins., § 718; Kneeney v. Ins. Co., 71 N. Y. 396; Ins. Co. v. Pulver, 20 N. E. 18; Gauche v. Ins. Co., 10 Fed. 347; O'Brien v. Ins. Co., 63 N. Y. 108.

The furnishing of proofs of loss by respondent was indispensable to a right of action upon the policy. His failure in this regard was ·fatal. Savage v, Ins. Co.; Ins. Co. v. Lawrence, 2 Pet. 52; Williams v. Ins. Co., 39 Fed. 167.

*A. E. Hitchcock* for respondent.

The property insured was personal property. Myrick v. Bill, 3 Dak. 284; Washington Mills M'f'g Co. v. Ins. Co.. 135 Mass. 503; Merrill v. Ins. Co., 73 N. Y. 452; Schuster v. Ins. Co., 6 N. E. 406; Ins. Co. v. Schreck, 43 N. W. 340; Currey v. Ins. Co., 10 Pick. 535; Ferris v. Quimby, 2 N. W. 168; McConnell v. Blood, 123 Mass. 47; James v. Chair Co., 38 Mich. 92; Adams v Lee, 31 Mich. 440.

The policy in suit was issued without any application by the insured, or any representations save those made so by the conditions of the policy. If those conditions are obscure in their meaning, they will be construed most strongly against the insurer. 1 Wood on Fire Ins., pp. 409, 426, 352; Fort v. Ins. Co., 61 N. Y. 571; Stout v. Ins. Co., 12 Fed. 554; Allen v. Ins. Co., 85 N. Y. 473; Ins. Co. v. Drake, 101 Pa. St. 26; Ins. Co. v. Mund, 102 Pa. St. 89; Pettit v. Ins. Co., 43 N. W. 379.

Even when there are defects in the proofs of loss, should the insurer fail to object and point out specifically the defect, or call for the information omitted within a reasonable time, such failure will be deemed a waiver, no matter how defective the proofs may be. 2 Wood on Fire Ins., pp. 968, 972, 953; § 4177 Comp. Laws; Smith v. Ins. Co., 49 Wis. 327.

BENNETT, J. This is an action instituted by the plaintiff against the defendant insurance company, on a policy of insurance, for loss sustained in the destruction of his machinery, shafting, belting, pulleys, elevator, and fixtures contained in

the three-story iron-clad building situated in Pittsburgh, Pa. The defendant, by way of an answer, alleges: That the plaintiff did not furnish proof of loss, nor an inventory of property partially or totally destroyed, or the cost or value of the same, nor did he furnish copies or policies issued on this property by other companies, or rates of premium paid other companies; that plaintiff did not furnish copies of bills and invoices, the originals of which could not be produced, or plans and specifications of property destroyed and damaged. *Second.* That the plaintiff was not the owner of said property, nor the owner of the land upon which it was situated; that on the 31st day of January, 1888, the plaintiff assigned and transferred by lease all his interest in and to said property to Elizabeth Peet; and that the defendant company had no notice of such facts. *Third.* That after the issuing of said policy, and prior to the fire, the said plaintiff had leased certain portions of said building; and that said plaintiff was not in possession of said building and property, all of which was unknown to the defendant. *Fourth.* That the plaintiff, in his proof of loss, falsely and fraudulently represented that he had sustained a total loss upon said property; that he was the owner of all of said property, and no other persons had any interest in it. The trial of the cause was before a jury, and, at the close of the testimony, the court directed a verdict in favor of the plaintiff for the sum of $1,561.25. This appeal is taken from the judgment and the order denying the motion for a new trial. The assignment of errors is as follows: (1) The court erred in denying defendant's motion to direct a verdict for defendant. (2) The court erred in refusing defendant's request to go to the jury upon the issues presented in the pleadings. (3) The court erred in directing a verdict in favor of the plaintiff upon the issues. (4) The court erred in denying defendant's motion for a new trial. The questions presented by the record are: (1) Was the direction of the verdict for the plaintiff within the province of the court? (2) Were the notice and proofs of loss furnished by the plaintiff such as were required by the

policy? (3) Did the fact that the building in which the property insured was situated stood upon leased ground, make the policy void? (4) Was the ownership of the property changed after the policy was issued and before the fire occasioning the loss? (5) Did the subleasing of the building in which the property insured was situated vitiate the terms of the policy?

In considering the first question, it becomes necessary to review all of the others, separately and collectively, in connection with it. The general rule is well settled that, in a jury case, the direction of a verdict is only justified when the evidence conclusively establishes the right of the party in whose favor the direction is given. The test of the right to direct a verdict is whether the court would be bound to set a verdict aside as against the evidence, if rendered against the party in whose favor it was directed. If this would be the duty of the court, the judge need not await the verdict before acting, but in advance may rule the question as one of law. But as verdicts cannot be found on mere conjecture, neither will a shadow or possibility, nor a mere *scintilla*, stand in the way of ruling the case in favor of the party who shows a substantial right, of which there is no substantial contradiction. If the proof of a fact is so preponderating that a verdict against it would be set aside by the court as contrary to evidence, then it is the duty of the court to direct a verdict. People v. Cook, 8 N. Y. 67; Kelsey v. Oil Co., 45 N. Y. 509; Neuendorff v. Insurance Co., 69 N. Y. 389. It was said in Baulic v. Railroad Co., 59 N. Y. 356, by Judge ALLEN, that "it is not enough to authorize the submission of a question as one of fact to the jury that there is 'some evidence.' A *scintilla* of evidence, or a mere surmise that there may have been negligence on the part of the defendants, would not justify the judge in leaving the case to the jury." Quoting from Judge WILLIAMS in Toomey v. Railway Co., 3 C. B. (N. S.) 146. In Hyatt v. Johnston, 91 Pa. St. 200, Justice STERRETT says: "Since the *scintilla* doctrine has been exploded, both in England and this country, the preliminary question of law for the court is not whether there is literally

no evidence, or a mere *scintilla*, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established." Citing Ryder v. Wombwell, L. R. 4 Exch. 39. The rule held by the supreme court of the United States is expressed by Mr. Justice CLIFFORD, in Improvement Co. v. Munson, 14 Wall. 442, as follows: "Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly, it was held that, if there was what was called a '*scintilla*' of evidence in support of a case, the judge was bound to leave it to the jury; but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof rests." To the same effect are: Pleasants v. Fant, 22 Wall. 120; Commissioners v. Clark, 94 U. S. 284; Griggs v. Houston, 104 U. S. 553; Bagley v. Rolling-Mill Co., 21 Fed. Rep. 159; Bagley v. Bowe, 105 N. Y. 179, 11 N. E. Rep. 386; Bulger v. Rosa, 119 N Y. 460, 24 N. E. Rep., 853; and Longley v. Daly, 46 N. W. Rep. 247, and Marshall v. Manufacturing Co., 1 S. D., 290, (decided at the present term by this court.) Conceding the rule in relation to directing verdicts from juries by the judge to be as above stated, what are the facts disclosed by the testimony in the trial of the case now under consideration, and their applicability to the above rules? In a condensed form, as appears from the abstract, these may be stated as follows: The defendant is an insurance company, incorporated under the law of Dakota, with principal office at Mitchell. The plaintiff, Peet, resided at Pittsburgh, Pa., where the insured property now in question was situated. The evidence does not disclose that there was a written application, usually made and signed by the plaintiff, before the issuance of the policy. The policy was

regularly issued. Payment of the premium was made by the plaintiff to defendant. The fire occurred on the 24th day of February, 1888, whereby the property, as stated in the policy, was totally destroyed The value of the property exceeded the face of the policy, and the entire insurance upon it, making a total loss; that, within the time prescribed by the terms of the policy, notice of loss was furnished the company at its home office. These facts were not contested at the trial of the cause in the court below, and are not brought into question here.

Proofs of loss were forwarded to defendant shortly after the fire. Two objections are made to these. (1) The inventory was not sufficient. (2) The original bills of invoice, or copies of same, were not furnished. The policy provides that the "assured shall make and furnish to the company an inventory, naming quality, quantity, and cost of each article." The schedule attached to the proof of loss is as follows:

SCHEDULE.

| Machinery. | Sound Value. | Loss Allowed. |
|---|---|---|
| Engine and boiler........... ...................... | $1,800 | $ 800 |
| Machinery for 14-in. bucket elevator.................. | 500 | 337 50 |
| Platform, elevator, and machinery.................... | 600 | 400 |
| St. French buhr mills............................... | 500 | 400 |
| Two sets grain-dryers .............................. | 900 | 700 |
| Three sets bucket elevators......................... | 600 | 400 |
| One hay press and machinery........................ | 675 | 475 |
| One hay cutter and machinery....................... | 250 | 200 |
| One bolting-machine ............................... | 375 | 250 |
| Shafting, pulley, hangers........................... | 500 | 350 |
| Belting............................................ | 250 | 100 |
| | $5,150 00 | $4,412 50 |

The schedule was amended by adding the figures, above the word "shafting," $375, $262.50; above the word "pulley," $75, $532.50; and above the word "Hangers," $50, $35. It was also further amended by adding the following statement: "List of Other Insurance. Merchants' Ins. Co., of Decatur, Alabama. Form. .J. M. Peet, doing business as J. M. Peet & Co., Five hundred dollars on machinery, shafting, belting, pulleys, elevator, and fixtures, while contained in the three-story iron-

clad building, situated on Grant St., near Seventh avenue, Pittsburgh, Pa. Privilege to use natural gas for fuel and light, and to work overtime. Other insurance permitted without prejudice to this policy. To attach to policy No. 5796 of the Merchants' Ins. Co. of Decatur, Ala. C. POACHER, Secretary. One thousand dollars. Pierre Ins. Co., of Pierre, Dakota, concurrent with the above. One thousand dollars. Howard Ins. Co., of New York, as follows: Five hundred dollars on building; $125 on boiler and engine; $375 on machinery as above. This was the proof of loss submitted to defendant; and this is also an uncontroverted fact. Concerning the proof of loss, plaintiff testifies: "I complied with their request as near as possible under the circumstances. As all our bills and receipts were destroyed, I cannot give the original cost of each article. I can tell it from my recollection of the costs. All of the personal property insured under the policy in defendant's company was set down in the schedule or inventory. The sound value in the proof of loss is the cost price as I recollect it, and the loss allowed, what was fixed by the adjuster. It was impossible for me to give the number of shafting, pulleys, hangers, and the amount of belting, as they were so much scattered in different parts of the building, and the iron was so twisted and injured by the fire. I sent defendant a copy of the conditions for the agreements of other companies, and also a statement of the rates of premium paid other companies, and also furnished them a certificate of the chief of the fire department." The corrected proofs were sent to defendant, and received by it April 18, 1888. As to the principal part of the inventory, it will be seen that the articles are named, giving their cost price and value at the time of loss. Objection is made to this inventory because it is not more specific, or that each item is not described more in detail. The word "inventory" has a well defined meaning in commercial circles, and is used to designate articles of merchandise or personal property, that the same may be distinguished, without any attempt to describe in detail the properties of each article. In the case of Smith v. Insurance Co.,

49 Wis. 327, 5 N. W. Rep. 804, the subject of insur-
ance was an organ which was lost by fire. The plain-
tiff scheduled the property as "an organ." The defend-
ant demanded a further schedule, which was refused by the
plaintiff, saying that, it being a single thing, he did not
know how it could be scheduled in any other manner. Up-
on appeal, the court said: "The schedule required we under-
stand to be an inventory; and an inventory of a single article
is made by naming the article." We are of the opinion that
this inventory meets the requirement of the policy.

As to the second objection to the proof of loss,— "that orig-
inal bills of invoice or copies of same were not furnished,"—the
policy provides that the assured shall furnish certified copies of
all bills and invoices of the property, the originals of which can-
not be produced, "whenever required, or as often as required."
The requests and objections of defendant as to the proof
of loss furnished are contained in letters dated April 9th and
May 22d. In the letter of April 9th, the defendant made no
mention of bills of invoice. The letter of May 22d does call at-
tention to the fact that the policy contains a clause, as follows:
"The assured shall also furnish certified copies of all bills and
invoices, the originals of which cannot be produced." The letter
further states that "the purported proofs you sent in do not
give any such information, but simply say, under one item,
'sound value,' and under another, 'loss allowed.' We would
like to know on what basis the sound value was obtained, and
also on what basis the loss was allowed." The fire occurred
on February 24th. The proofs of loss were required by
the policy to be furnished within sixty days after the fire, or
before April 26th. Plaintiff furnished the first proofs before
April 9th. By letter of defendant on that date, it points out
several alleged defects, and returns the proof for correction,
but in this letter does not say a word about "original bills or
invoices, or certified copies of same" when originals cannot be
produced. The plaintiff corrects the proofs, and returns them
to the defendant, which were received by it April 18th. Not a
word is said by defendant in this particular until May 22d,

forty-two days after the corrected proofs were received, and six days after the expiration of sixty days in which proofs were to be furnished, and then it refuses to pay the loss. All these facts were uncontroverted. The rule in relation to defects in proofs of loss is stated by Wood on Insurance (volume 2, p. 968) to be as follows: "It seems to be settled beyond dispute that when there are defects in the proofs of loss, whether formal, substantial, or indeed in any respect which could have been supplied, if specific objections had been made thereto by the underwriters, a failure on their part to object to the proofs on that ground, or to point out the specific defect, or call for information omitted, within a reasonable time, is considered a waiver, however defective, informal, or insufficient such proofs may be." Sections 4177, 4178, Comp. Laws, virtually adopt this rule, and are as follows: "When preliminary proof of loss is required by a policy, the insured is not bound to give such proof as would be necessary in a court of justice; but it is sufficient for him to give the best evidence which he has in his power at the time." "All defects in a notice of loss, or in preliminary proofs thereof, which the insured might remedy, and which the insurer omits to specify to him, without unnecessary delay, as grounds of objection, are waived." While it may be admitted that the original bill of invoice or copies of same were not furnished, and that the items furnished were somewhat general, yet, was it not the best evidence which the plaintiff had in his power at the time? Mr. Peet testifies that all his bills, invoices, and receipts for this machinery and other personal property were destroyed at the fire. "It was impossible for me to give the number of the shafting, pulleys, hangers, and the amount of belting, as there was so much of it scattered in different parts of the building, and the iron was so twisted and injured by the fire. I do not not know how much shafting there was in the building at the time of the fire; nor do I know the number of pulleys or hangers; nor can I tell the size of the shafting, the number, size, and face of pulleys, or the size or number of the hangers; nor can I give the number and feet of various widths of belting,—there were so many diffent lengths

and widths of it. The cost of all these are arrived at from my best recollection." Mr. Lapp, another witness, testified that the machinery, belting, shafting, pulleys, etc., were badly burned, and the *debris* was sent to the scrap-iron yards. There could have been no measurements of the belting, as it was burned. The shafting could have been measured, but one could not determine the size from such measurement. Mr. Hohrhoff, another witness, corroborates the above witness. From these uncontroverted facts, is it evident that the plaintiff "has given the best evidence which he has in his power at the time," in relation to his loss? Are these facts such as should be submitted to a jury for an undirected verdict, or are they facts upon which questions of law arise to be determined by the court? The question for determination was, did the plaintiff comply with the requirements of the policy in relation to the proofs of loss? There was no conflicting evidence to reconcile; no disputed testimony to weigh. This being the case, the court could determine the rights of parties as well as the jury, and in so determining it committed no error. The defendant also denies its liabilty under the policy, because the building in which the property insured was situated was upon leased ground. The policy states that it "shall be void and of no effect unless consent is indorsed by the company hereon, in each of the following instances, viz.: If any building herein described, being the subject of this insurance in whole or in part, be or become vacant or unoccupied, or stands upon land not owned in fee simple by the person or persons named herein as the assured." It is an undisputed fact that the building which contained the insured property stood upon leased ground, and that the defendant had no notice of this fact. The defendant's policy did not cover the building, but only "the machinery, shafting, belting, pulleys, and elevator fixtures, while contained in the three story iron-clad building situated on Grant st., near Seventh ave., Pittsburg, Pa." The theory upon which defendant claims no liability is that the "machinery," etc., insured, constituted a part of the real estate, and that they attach to the soil; and that, if the plaintiff did not

own the land upon which it was situated, in fee simple, he could not recover.  This cannot be correct.

It is sometimes very difficult, under the peculiar circumstances of a case, to determine whether a particular thing is a part of the realty or not.  It does not depend upon one fact alone, but generally upon several.  Among these facts are those of attachment to the soil, the intention of parties, and those facts which enter in to show where the equities and justice of the case are.  The extent and nature of the attachment have much weight in determining whether a given thing is a part of the realty or not.  When the connection is slight, property is often considered personal property; whereas, if the connection were close and intimate, it would be considered real estate.  A key to the door of a house is a fixture, and a part of the realty, although at the time it may not be at or near the premises to which it belongs.  While, on the other hand, annual crops, and a nursery of young trees raised for sale, may not be a part of the realty, but only chattels, although most firmly and intimately attached to the soil itself.  Dwelling houses or indeed anything placed by men upon the soil, if they can be again removed, either in bulk or in pieces, may under some circumstances be only chattels, although they may be ever so firmly attached to the soil.  The intention of the parties is one of the strongest elements in determining questions of this kind. Judge COOLEY states the rule substantially in these words: ''The parties concerned may, by agreement in due form, give to fixtures the legal character of realty or personalty at their option, and the law will respect and enforce their understandings whenever the rights of third parties will not be prejudiced.  Thus, a house constituting a part of a realty may be mortgaged or sold separate from the land, and the mortgage or sale be perfectly valid if made in such form as to be sufficient under the statute of fraud.''  Cooley, Torts, p. 430.  The undisputed facts upon this point of the case under consideration are:  The land or lot was first leased by Elizabeth Peet, wife of the plaintiff, December 22, 1880, from an estate.  Permission was given in the lease to remove all improvements at any time,

and by the terms of the lease it was clearly the intention of the parties that the building or any other improvement put upon the land should be personal property, and was not attached to the soil so as to become real estate. If it was essential for the defendant to know by what title the plaintiff held the land on which the building stood in which the "machinery," etc., was situated, that inquiry should have been made at the time of issuing the policy, and not deferred until after a loss had occurred before raising the question. This policy was issued without application by assured, or any representations having been made, save as are made by the conditions of the policy. No evidence appears of record that the insurer ever saw the property or the building in which it was located. The face of the policy does not disclose what use was made of the building or property. The policy does not state whether the machinery and fixtures were packed and in storage, or in active use. As a matter of fact, insurer had no knowledge about the risk sufficient to form a belief concerning it until after the loss by fire. The rule of law in such cases is stated in the case of Washington Mills Manuf'g Co. v. Weymouth Ins. Co., 135 Mass. 505. Where no fraud was committed or attempted by the plaintiff, or any of its agents, the plaintiff making no misrepresentations and no concealment as to his title, and the defendant saw fit to issue the policy without specific inquiries of the plaintiff as to the title to the land, and without any representation by the plaintiff upon this point, it was its own carelessness, and it cannot avoid the policy. An innocent failure to communicate facts about which the plaintiff was not asked will not have this effect. See, also, Com. v. Insurance Co., 112 Mass. 136; Fowle v. Insurance Co., 122 Mass. 191; Walsh v. Association, 127 Mass. 383. Mr. Wood, in his work on Insurance, (volume 1, p. 409,) states the recognized rule to be: "If the defendant saw fit to issue the policy without specific inquiries of the plaintiff as to the title to the land, and without any representation by the plaintiff on this point, it was its own carelessness, and it cannot avoid the policy without intentional misrepresentation or concealment on plaintiff's part." The facts are undisputed, and

raise only questions of law which rightfully belonged to the court and not the jury, and were decided correctly.

The next question involved in the case is whether the ownership of the property changed subsequent to the date of the policy and previous to the fire. The policy contains the stipulation that it shall be void "if any change takes place in the title, interest, possession, or occupancy of the property" without notice to the company. The defendant claims that there was a change in "title" and occupancy, and therefore avoided the policy. The evidence upon the point is that of the plaintiff, Elizabeth Peet, Francis B. Torrens, and Lapp and Hohrhoff, employes of Peet. The plaintiff testifies: "At the date of the issuing of the policy I was the owner of the property mentioned, and the ownership of that property did not change from the 10th day of October, 1887, to the 24th day of February, 1888. Mary E. Shanley, of England, was the owner of the ground on which the building stood, and when I leased the ground I made a contract of lease with her agents. The lease to me was for the ground only. I erected a three-story iron-clad building on this ground. The building belonged to me individually, and I had a right to remove it. I assigned the Shanley lease received by me to Elizabeth Peet. Elizabeth Peet did not take possession of said building or property, and I was the owner of the property insured between October, 1887, and March, 1888. The personal property insured by defendant company was in my building at the time of the fire, and I was the owner and in possession of all the personal property at the time of the fire." Elizabeth Peet testifies: "The lease was made out to me, and was simply for the ground. At that time there were some old buildings, a warehouse I think, on this ground. Mr. Peet purchased the buildings. The old buildings were torn down, and and the new building put up by Mr. Peet. Mr. Peet owned the building. He put into the building machinery of different kinds for the purpose of his business. He owned that machinery. Neither the building nor the machinery was ever owned by me or transferred to me by Mr. Peet, and was never in my possession or under my control. The payments of the ground

rent were made by Mr. Peet, and receipts were made out to him while the leasehold was vested in me. None of my money went into the purchase of this leasehold, or of the improvements thereon, or of the payments of the ground-rents while I held title to the leasehold. I simply held the ground under the lease." George Lapp testifies: "I was book-keeper for J. M. Peet. Entered his employment August, 1886, and left it in March, 1888. Mr. Peet carried on his business in that build ing." Christian H. Hohrhoff testifies: "I was 'general manager for J. M. Peet. J. M. Peet was in the possession of this machinery in the month of October, 1887, and up to the date of the fire. The possession of this property had not changed during that time to my knowledge. I had charge of this property as the foreman of J. M Peet." Francis B. Torrens testifies: "I am one of the agents of Mary E. Shanley. The buildings that were on the lot were purchased by Mr. Peet, and he could have removed them. We always received Mr. Peet's check and made out receipts in his name for the rent. Mr. Peet paid the taxes on the property. The improvements placed on the property belonged to the tenant, or the persons who may erect them." On January 31, 1888. this lease was assigned to Elizabeth Peet, and remained in her name.until after February 24, 1888, the date of the loss by fire. This lease conveyed the ground, and provided that all improvements made or erected by the lessee might be removed frcm the lot at its termination. It was first made to Elizabeth Peet, the wife of the plaintiff, and was issued December 22, 1880, for four and a quarter years from January 1, 1881. The ground only was leased. The buildings that were then situated on the lot were purchased by James M. Peet, the plaintiff, and they could have been removed by him. Since that time all the negotiations for the various leases taken out for this property have been made with Jame M. Peet and the agent for the owner of that property. The lease of December 22, 1880, to Elizabeth Peet was transferred by her to James M. Peet on October 30, 1882, and remained in his name until February 14, 1885, when a new lease was issued to Elizabeth Peet for five years from April 1,

1885. This last lease was assigned to James M. Peet, September 20, 1886. A new lease was issued to James M. Peet on September 21, 1886, for the balance of that term. This last lease was assigned to Elizabeth Peet, January 31, 1888. On February 24, 1888, the building, and machinery, etc., situated in said building destroyed by fire. The ownership of this property at the time of the fire was one of the issues, and, if there was any evidence that was disputed or contradictory, it was the province of the jury to settle that fact. When facts are not disputed, but when different minds might honestly draw different conclusions from them, then the question should be left to the jury for their determination. In the case under consideration, the evidence shows that the building, fixtures, and machinery were placed upon this land when the wife held the leasehold title. The leasehold was transferred to the plaintiff, in order that he might borrow money upon it with which to prosecute his business. The plaintiff testifies that when he assigned the lease to Elizabeth Peet it was his intention to revest in her the same title and the same property which she had under the Shanley lease. Intention is a fact to be proved, as any other fact, and one particularly within the province of the jury. The various changes of this property under the lease, and the intention that caused them to be made, should have been left to the jury under proper instructions from the court.

It is further contended by defendant that plaintiff subleased the premises in violation of the terms of the policy. The contract of insurance provides that the policy shall be void if any change takes place in the title, interest, possession, or occupancy of the property, or if the risk be increased by any change in the use or occupation of the building or premises, or by any means whatever. After the issuing of the policy, the plaintiff subleased 40x5^ feet of the building in which the machinery was situated to Schoonmaker & Co. for a storage room, and about 20x1(0 on Grant street was rented for offices to four other parties. All had written leases, of which the defendant had no notice. The effect of such a clause in a policy of insurance has been frequently considered by the courts. It differs

from that class of conditions which refer to a state of things existing at the time of the execution of the policy. It looks wholly to the future, and solely concerns the conduct of the assured. It binds him to a rigorous course of conduct as to the observance of existing precautions and the introduction of new sources of danger. The bearing of it is well stated by Chief Justice SHAW in Houghton v. Insurance Co., 8 Metc. (Mass.) 114–122. The clause in that case was not precisely in form like the one under discussion, but was substantially the same. He says: "This provision binds the assured, not only not to make any alterations or change in the structure or use of the property which will increase the risk, but prohibits them from introducing any practice or custom or mode of conducting their business which would materially increase the risk, and also from the discontinuance of any precaution represented in the application to be adopted and practiced with a view to diminish the risk." Whenever there is a change of occupancy or of business or the erection of additional building, or change of the one insured, the question whether there has been a material increase of the risk or not is a question of fact to be determined by the jury; but whether an increase of risk avoids the liability of the insurer is a question of law for the court. Hobby v. Dana, 17 Barb. 111; Jennings v. Insurance Co., 2 Denio, 75; Grant v. Insurance Co., 5 Hill, 10; Insurance Co. v. Stewart, 19 Pa. St. 45; Jones v. Insurance Co., 51 N. Y. 321; Gamwell v. Insurance Co., 12 Cush. 167.

The evidence in this case shows that the building in which the property insured was situated was, at the time the policy was issued, in the possession of the plaintiff, and that during the life of the policy a portion was subleased for storage purposes, and to four other persons for office use. The evidence does not disclose what was the character of the property stored, or what business was transacted in the offices. Still, whether the subletting was of materiality to the risk or not, should have been submitted to the jury, under proper instructions. For the errors above noted, judgment must be reversed, and the cause remanded for a new trial. All the judges concurring except KELLAM, J., who did not sit in the case, nor take part in the decision.