WILLIAM M. GOODRICH, HENRY THOMAS, JR., and ARTHUR B. GRISWOLD, Respondents, *v.* JAMES M. THOMPSON and JOHNSTON LIVINGSTON, Appellants.

If an agent (a clerk), authorized, by the general mode in which the business of his principals (forwarders) is conducted, to make a general contract in the ordinary course of the business, assumes to make a special contract with a third person, who has no notice of any limitation of the authority of such agent, the principals, as between themselves and such third person, are bound by the contract so made.

If an express company contracts to forward goods by a particular steamer, but in fact sends them by a different steamer and they are lost, the company is liable for the loss. The fact that the specified vessel is withdrawn from the route, so that the goods could not be shipped by her, does not

authorize them to forward " by any other usual, customary and proper mode of conveyance." It is their duty to notify the owner and await instructions. Forwarding by another vessel being unauthorized, they are responsible for the consequences.

It is no ratification of such shipment that the owner receives insurance money upon the goods lost. The unauthorized act of the company did not deprive the owner of any interest in the property, and it is sufficient that the insurance received is deducted from the value of the goods for which the company have become responsible.

(Argued January 7, decided May 1, 1871.)

APPEAL from an order of the General Term of the New York Superior Court, affirming a judgment entered upon the report of a referee, in favor of the plaintiff, for $7,413.97.

The action was brought in the Superior Court of the city of New York, by the plaintiffs, for the recovery of damages from the defendants, who were the proprietors of the " Harnden's Express," for the non-fulfillment, according to the allegations of the complaint, of their agreement made on the first day of December, 1855, to forward, as common carriers, three boxes of merchandise by the steamship " Ocean Bird," from the city of New York to New Orleans, and there deliver them to the plaintiffs within a reasonable time; and the complaint also alleged, that after the delivery of the boxes to the defendants, they caused to be executed and delivered unto the plaintiffs a receipt and agreement in writing (a copy of which was annexed to and formed a part of the complaint), in the following terms, viz. :

" Harnden's Express, No. 74 Broadway ; rear entrance, 11 New street; general forwarding and commission office. Proprietors, Thompson, Livingston & Co. For Boston, Providence and the east ; Philadelphia, Baltimore and the south ; New Orleans, Mobile and all parts of Georgia, Alabama and Tennessee.

"NEW YORK, *Dec.* 1, 1855.

" John N. Olcott has delivered to us three boxes merchandise marked E. G. H., New Orleans, Nos. 703, 704, + H. & Co., No. 200, which we undertake to forward to New Orleans and deliver to Hyde & Goodrich, per Ocean Bird.

" Dangers of navigation, of fire, water, breakage, leakage and transportation excepted (we not holding ourselves responsible in any event, if lost, stolen or damaged, beyond $50), unless insured by mutual agreement.

" The proprietors of the Express are alone responsible for the loss of any property committed to their care. (Contents unknown.)

" For the proprietors,<br>" TILLINGHAST."

The defendants, by their answer, denied that they were common carriers, and alleged that they were forwarders of goods between those cities under special agreement with the owner or owners of goods to be forwarded. They then, after denying the ownership by the plaintiffs of the goods mentioned in the complaint and their value, denied that they agreed to forward them by the said steamer, but alleged that they received the same to be forwarded on certain terms and conditions specified in a certain receipt executed and delivered by them and accepted by the plaintiffs, which " clearly and accurately expressed the agreement between the parties thereto in respect to the forwarding of the said boxes," and that they made no other agreement, and did not assume or undertake any other duty or obligation in respect to the boxes than is therein expressed. The receipt is set forth in the answer, and is the same as that contained in the complaint, with the exception of the additional words " per Ocean Bird " after the names " Hyde & Goodrich " in the latter. The defendants also alleged in their answer that they, at the time of the delivery of the receipt, informed the plaintiffs' agent that the boxes would be forwarded by the steamship Crescent City; that they were so forwarded by her; and that she, while on her voyage, was wrecked, adding " but whether the said boxes of merchandise were then lost to, and never received by the owners or consignees thereof, these defendants have no knowledge, and therefore they deny the same;" but they claimed and insisted that, even if such loss did occur,

they were by the terms of their agreement exempted from all liability for damages of navigation, unless insured by mutual agreement, and that no such insurance was effected nor any agreement therefor made.

The issues were tried before a referee. The principal question litigated on the trial was whether Tillinghast, by whom the receipt set forth in the answer, as well as that in the complaint, was signed, was authorized to insert the words "per Ocean Bird," which were contained in the receipt, produced and read in evidence by the plaintiff and then marked as exhibit A, of which a copy is above set forth as part of the complaint. It appears, among other facts, that the Ocean Bird was withdrawn from the line of steamers running between New York and New Orleans, and did not make the voyage contemplated to be made when that exhibit was signed; that the boxes of merchandise were forwarded by the steamship Crescent City; that she was wrecked on her voyage; that she and the boxes were in consequence thereof lost; and that the plaintiffs had recovered the sum of $1,436.10 upon an open policy of insurance covering a portion of the goods contained in one of the boxes belonging to Maguin & Guidon, of the city of New York, but which had been sent and delivered to the plaintiffs, to be sold by them on a commission and for a profit. There were some exceptions taken to the admissibility and exclusion of evidence during the progress of the trial, and when all the testimony in the case had been introduced the defendants moved to dismiss the complaint on grounds referred to in the opinion of the court, which motion was denied, and an exception to such denial was taken. The defendants' counsel then insisted on and asked the referee to find and decide certain questions, contained in nine distinct propositions submitted to him for that purpose, which he refused to do, and exceptions were taken, as is stated in the case, " to said several refusals."

The referee subsequently made his report in favor of the plaintiffs, allowing them the value of the goods in the boxes

on the day of their delivery to the defendants, after deducting the amount so received for and on account of insurance.

The defendants filed exceptions, by stating in a notice that they excepted " to the several findings of fact and to the conclusions of law contained in the report of the referee" in the action.

A judgment was entered on the decision, which was subsequently affirmed by the General Term of the Superior Court.

The questions involved in the decision of the appeal sufficiently appear in the opinion of the court.

The case below is reported 4 Robertson, 75.

*John E. Burrill,* for the appellant, as to the liability of the defendants for the act of Tillinghast, cited *Dows* v. *Perrin* (16 N. Y., 339); *Nixon* v. *Palmer* (8 id., 398); New Haven case (17 id., 592); 1 Pars. Cont., 39. That, upon the failure of the "Ocean Bird" to sail, the defendants were justified in forwarding by other fit conveyance, he cited *Brown* v. *Dennison* (2 Wend., 591); *Van Santvoord* v. *St. John* (6 Hill, 157); *William* v. *Vanderbilt* (28 N. Y., 221).

*Charles H. Tracy,* for the respondent.

Lott, Ch. C. The motion for the dismissal of the complaint, after all the testimony given on the trial had been introduced, is stated in the case to have been made on the following grounds, among others :

1st. That the receipt, exhibit A, did not restrict the defendants as to the mode of conveyance, and oblige them to forward by Ocean Bird.

2d. That as the Ocean Bird did not make the trip contemplated, the defendants were entitled to send by any other usual, customary and proper mode of conveyance.

3d. That the exhibit A was not made by the defendants or their authority, and was not obligatory upon them.

4th. That Tillinghast had no authority to sign the said exhibit A, or to make the contract claimed to have been made thereby.

None of the "other" grounds are set forth.

The exception taken on the denial of the motion, so far as it was based on the third and fourth of the grounds above stated, makes it necessary to examine the testimony in reference thereto.

It is important, before referring to the evidence given on the trial, to notice the fact that the defendants, in their answer, admit that they agreed to forward the boxes of merchandise in question, on the terms and conditions specified in a receipt in writing, of which a copy is set forth, executed and delivered by them, which they say "clearly and accurately expressed the agreement of the parties thereto, in respect to the forwarding of the said boxes."

That receipt was signed "For the proprietors, Tillinghast." The admission concedes that he was authorized to sign that receipt, and the only difference between it and that introduced by the plaintiffs, and marked exhibit A, is that in the latter the additional words, "per Ocean Bird," are added after the names of "Hyde & Goodrich," therein mentioned. The controversy is thus narrowed down to the question, so far as it relates to the grounds we are now considering, whether Tillinghast had authority to insert or add those words; or rather, whether there was such a defect of proof in support of such authority as to make the decision of the referee, in refusing to dismiss the complaint on that ground, erroneous.

It is proved, and indeed it is not denied, that the said exhibit A was signed by Tillinghast, and the evidence of the cartman who delivered the goods was to the effect that he carted them to the office of the defendants, and on reaching there he took them inside and delivered them to Tillinghast (who, so far as it appears from the case, was the only person therein at the time), and he then signed the said receipt (exhibit A) at his desk in the said office; that after it was so signed it was given to the witness, that he took and delivered it to a clerk in the office of the plaintiffs' agent, and that it was in the same condition on the trial as when Tillinghast

signed it.   He also stated that he was in the habit of taking goods to the express office of the defendants to go to New Orleans, on the sailing of every steamer; that he generally examined the receipt given therefor, to see if the name of the steamer was put in, and that he made such examination of the receipt in question.   There was also evidence introduced on the part of the plaintiffs tending to show that it had been agreed by and between an agent of the plaintiffs and James Stuart, an agent of the defendants, that the said boxes should be shipped by the Ocean Bird.

It was shown on the part of the defendants, that at the time of the transaction in question the said James Stuart was freight superintendent, that Lariston W. Winchester was superintendent of office, and " that Tillinghast was manifest clerk, and that his duties were making out way-bills which went east by the way of Stonington, and those south by way of Savannah;" that the New Orleans way-bills were made out by Stuart and under his supervision, and that Tillinghast had no authority to make contracts to transport freight by any particular vessel, or to give receipts for goods to be carried by any particular vessel, or which stated that they were to be so carried, and that he had no authority to sign exhibit A, and that no one except Stuart was authorized to insert the name of any particular vessel in the receipt of the goods to be forwarded.

Stuart stated that in this particular instance he did not insert or authorize the insertion of any particular vessel in the receipt, and was not positive that it was ever done for the plaintiffs previous to this shipment, but afterwards, on being asked if it was ever done in any instance for any one prior to the receipt of the goods in question he answered "I should say yes, because people would want it for their insurances," and it appeared by receipts given to the plaintiffs, signed by himself, subsequently introduced, one bearing date March 17th, 1855, and another dated November 26th, 1855 (only five days before that in question), for the forwarding of goods to New Orleans, that a particular steamer was named

by which they were to be sent. He also gave evidence to show that no agreement or promise had been made by him or instructions given to him to send the boxes in question by the Ocean Bird. He, on his cross-examination, stated that he had known Tillinghast to sign a receipt for property left to be carried, and on being asked by the referee if he had known of Tillinghast signing receipts for goods prior to the time of this transaction, he answered "ordinary receipts frequently," which in answer to a further question he said were "receipts for forwarding ordinary freight where there was no special agreement as to the manner of forwarding," and in answer to a question by the defendants' counsel he said that signing of ordinary receipts did not come under his own regular duty. He also stated that the defendants had a receipting clerk, and that signing of such receipts was the only duty of that clerk; but that he had seen Tillinghast sign a great many of the ordinary receipts, which it was the duty of the receipting clerk to give.

Winchester testified, on his cross-examination by the plaintiffs' counsel, that Tillinghast "sometimes performed other duties than those of manifest clerk; that is, such duties as he was called upon from time to time, giving ordinary receipts in our ordinary business. He sometimes received packages and gave receipts in the ordinary transaction of business." And he, on being asked by the said counsel whether he (Winchester) did not often receive packages to be carried by a particular steamer, answered, "not to my knowledge. We never gave receipts to go by particular steamers. My instructions were always to the contrary." He afterward qualified the answer by making "an explanation," as he called it, stating that it was often the case that steamers were advertised that did not go; that his instructions always were not to give receipts by particular steamer; but that they had "agreed to take by particular steamer, provided she went;" and being then asked whether in such case the receipt would show the fact that it was to go by the particular steamer, provided she went, he answered "I think I know of such cases, and I have

ordered it put in when it has been requested by the parties; that is, put the name of the steamer; that is, provided she went; but the proviso was not in the receipt. We told parties, now this steamer may not go." He then, on being asked "had Stuart authority to give receipts for a parcel containing an entry per such steamer," said "yes, sir, we gave Stuart that authority to use his discretion in such cases." He then, on further inquiries made of him, said that the clerks were accustomed to assist each other about their proper duties, and on being asked "if Stuart was absent for his dinner during business hours and a package came for which a receipt was wanted, was there anybody to perform his duties in his absence," he answered "most undoubtedly in all ordinary transactions." He also stated that it was the business of the receipt clerks ordinarily to give receipts for packages brought there, one whose sole business it was, and he did nothing else. He was then asked "on what occasion should Tillinghast, in the ordinary business of the office, give receipts," he answered "in the absence of the clerk who was there for that purpose, or whenever a package came in, in the ordinary business, he would give a receipt for it." He also gave further evidence tending to show on the one hand that the transaction in question was not an ordinary transaction in the office of the defendants, but one that would be arranged and closed by Stuart only, and on the other hand that a contract to carry goods by a particular vessel would be made as often as monthly or as often as a regular steamer, every first class steamer, was going.

I do not find anything in the case tending to show that either the plaintiffs or the public generally had any notice of the specific duties of Tillinghast, or that there was such a limitation or restriction in respect to his duties or authority as is claimed by the defendants.

It is proper to add that Tillinghast, at the time of the trial, was dead, and it does not appear that his examination had been taken before his death.

The preceding reference to the testimony shows clearly that the referee would not have been warranted in holding and deciding that there was not sufficient evidence to sustain a *prima facie* case of the authority of Tillinghast to sign and deliver the said exhibit A. On the contrary, the evidence of Stuart and Winchester, although their recollection was at times indistinct and uncertain, if not seriously at fault, was, together with the admission in the defendants' answer, to which I have referred, sufficient proof of such authority. The fact stated by Stuart, that the name of the vessel would sometimes be inserted in the receipt, "because people would want it for their insurances," and the testimony of Winchester afterward, saying that they never gave receipts to go by a particular steamer, and then making "the explanation" of the statement to which I have alluded, that he knew of cases where the receipts did contain the statements, and that he himself had ordered them put in when it had been requested by the parties, were calculated to raise a serious doubt whether there was in fact any limitation or restriction whatever in the authority of Tillinghast, and it is certain that there was none that could affect persons in their dealings and transactions with him without notice thereof, it being conceded that he, in the absence of Stuart from the office, would "most undoubtedly in all ordinary transactions" have been authorized to give a receipt for a package coming in, and I will add that if Stuart had verbally agreed, as testified to by a witness for the plaintiffs, that the goods should be shipped by the Ocean Bird, this cannot be considered other than an ordinary transaction, the receipt being given in pursuance of such agreement and not a new contract made by Tillinghast himself. Be that as it may, I concur with the referee (to use the apt language) that "it is entirely clear that so far as third persons were concerned, he had the apparent authority to bind his principals." Assuming, then, that the receipt was properly given, it was obligatory on the defendants to forward the goods to New Orleans by the steamer designated therein. They were received for that and for no other purpose, and

the defendants had no right, on the failure of the Ocean Bird to make the contemplated voyage, to send them "by any other usual, customary and proper mode of conveyance," as claimed in the second ground of the motion for the dismissal of the complaint. That would justify a control over property which was never authorized. A specific agreement to do an act in a certain manner is not satisfied by an attempt to do it in another and a failure to accomplish the object. There was no unexpected emergency rendering it necessary to send the goods by the Crescent City. When it was ascertained that the Ocean Bird would not sail for New Orleans, and that therefore the boxes could not be sent by her, it was the duty of the defendants to notify the plaintiffs of that fact and await their instructions. (See *Johnson* v. *N. Y. Cen. R. R. Co.*, 33 N. Y. Rep., 610.) The forwarding of the goods by another steamer than that agreed upon without the assent of the plaintiffs, or any notice to them of their intention so to forward them, was clearly not an execution of the agreement the defendants entered into, and they were chargeable with the consequences of the unauthorized act. It follows that the referee did not err in his refusal to dismiss the complaint. His subsequent findings and decision in favor of the plaintiffs, and the affirmance thereof by the General Term, are conclusive upon the questions of fact involved in the issues, and they cannot be reviewed by us.

It is insisted, however, that the plaintiffs did ratify and confirm the shipment by the Crescent City by demanding and collecting the amount of the insurance upon a portion of the goods on board and lost with the vessel. It is a sufficient answer to this claim to say that the plaintiffs did not lose their title to, or interest in, the property by reason or in consequence of such shipment, and they had a right at any time to reclaim it before it was lost. Having such title and interest at the time of such loss, they were entitled to recover the amount for which the insurance company had become liable under its policy. The sum received has been deducted from the value of the goods for which the defendants had become

responsible, and having themselves received the benefit thereof, they certainly have no ground of complaint.

It is also claimed that the plaintiffs were not entitled to recover the value of a package of jewelry belonging to Maguin & Guidon. This is not a valid objection to such a recovery. The defendants received the property from the plaintiffs, and on such receipt assumed a duty and obligation in reference thereto. They are, therefore, estopped from denying the title of the plaintiffs thereto. It was, moreover, as the referee has found, held on consignment to the plaintiffs, and to be sold by them on commission and for a profit, and thus they had an interest therein.

The other questions raised by the appellants' counsel, as to the amount of damages allowed to the plaintiffs, are unavailable here. They were disposed of by the affirmance of the referee's findings by the General Term, and are conclusive on us. I will add that the general exception taken "to the several findings of fact and the conclusions of law contained in the report of the referee herein" is not sufficient to present those questions, even if they were reviewable. (See *Newell* v. *Doty*, 33 N. Y. Rep., 83.)

It is also claimed on the part of the appellants that there was a substantial variance between the case made by the complaint and the decision of the referee, it being alleged in the complaint that the Ocean Bird had made the voyage and arrived at New Orleans, and the referee having found that she did not make the contemplated voyage to New Orleans nor leave the port of New York, but was withdrawn. It will suffice to say in reference to this ground that it does not appear that any exception or even an objection was taken to a recovery or otherwise on account of such variance. It, therefore, is not available here.

The only other questions to be considered are those arising on the rulings of the referee in respect to evidence. Those relied on by the appellants' counsel in his points will be noticed in the order in which they are therein presented.

1st. It is claimed that certain evidence given by Olcott, the plaintiffs' agent, should have been stricken out. It had been taken without objection at the time it was given, and the motion to strike it out was not made till the direct examination of the witness was closed. That was too late. His acquiescence in the matters testified to justified the denial of the motion.

2d. It is also claimed that "the depositions of the plaintiffs Griswold and Goodrich were improperly admitted." The only objections taken to them on the trial were made when they were offered to be read, and were general. The case states "defendants objected and excepted," and no grounds of objection are now stated in the points of the learned counsel.

3d. The defendants made an offer to show by Stuart that from one to four days after the sailing of the Crescent City he stated to Conger, one of the plaintiffs' witnesses, on the sidewalk in front of the defendants' office, "that the boxes had been sent by the Crescent City," to which Conger replied that he believed Mr. Olcott did not wish them sent by her, but that he had better not say anything about it, and that witness remarked that he ought to tell Olcott on account of his insurance. This was excluded, and properly. What was said to Conger could not affect the plaintiffs. Although he was a clerk in the office of Olcott, the plaintiffs' agent, he had no power or authority to say or do anything at that time in relation to the transaction which could qualify or in any manner change the rights of the parties under their agreement.

I see no ground on which the testimony offered was admissible, and the appellants' counsel does not state any. I am, therefore, brought to the conclusion, after a full and careful examination of the case, that there is no ground whatever for the reversal of the judgment. It must consequently be affirmed with costs.

All concur. Judgment affirmed with costs.