Neilson, Ch. J.
In bringing the action the plaintiff claimed that he was entitled to the possession of the horse, and had been wrongfully deprived of that possession by the defendants. The principal contention on the trial was as to that right of possession. If it existed, there was no doubt as to the wrongful act charged
The plaintiff was the owner of one-half of the horse ; and conceding that Swan had been the owner of the other half, he sought to show that he had purchased Swan’s share through his agent. The authority of the agent was denied, and the jury found for the defendant on that question.
In support of his alleged right of possession, the plaintiff set up title to the property. If the case had been contested, with strict. attention to the words of the complaint, using those words in their limited sense, the right of possession depending on his having the entire title to the property, the plaintiff would have failed in his action. But the case was not so tried. It appeared that, before the plaintiff had become part owner, he was keeping the horse under an arrangement by which, as he testified, he was to hold the possession of it until the bill was paid. Part of the charges was payable by Swan. There was proof, tending to show that Swan had recognized the claim, on the bill having been rendered. The bill was produced, and the defendants’ counsel put it in evidence. Another exhibit is a letter from the defendant Swan, to this plaintiff, calling for a memorandum of the expense, as he was anxious to have it settled. That bill was before the court in a double aspect. The plaintiff sought to show, that it had been applied in part payment on the purchase made through Swan’s agent. But that attempted purchase, and application of the claim, having failed by reason of the agent’s want of authority, the account remained as if no such *331 sale had been attempted. The plaintiff’s claim had not been thus satisfied. On the- trial even the items were contested. Late in the case, by the indulgence of the court, the proofs were opened to allow Mr. Swan to contradict the testimony of the plaintiff as to his version of the agreement. Finally, at about the close of the charge to the jury, the defendants’ counsel, addressing the court, said, “But I ask your Honor to submit to the jury the amount of the bill for which the parties have a lien,” and the required instruction was given. The jury were thus enabled the better to apprehend the work assigned to them.
Thus it was that the case went to the jury: First. As to the attempted purchase of Swan’s share of the horse. Secondly. In respect to the items and amount of the bill, and the agreement and right to hold the horse until payment should be made. On all those questions the testimony was conflicting, and the jury found, as appears by the verdict, that, at the time the horse was taken, the plaintiff, by virtue of the agreement, had the right of possession.
There can be no doubt of the equitable character of the agreement, or as to the right to continue acting under it after the plaintiff became part owner of the property, or as to the validity of such an agreement, if made, between the joint owners. It would be strange, indeed, if one of the parties could, by such a stipulation, beguile the other into an expensive course of service in keeping and managing the property, and yet have the common law right of possession, as if no stipulation had been made. In the absence of such an arrangement, one of those owners, having the same right of possession as the other, could not, by an action of replevin or of claim and delivery, take from the other the property thus owned in common, or set up and enforce an implied lien. In the argument before us, cases were cited as to the rules of the common law, *332 and the practice peculiar to actions of replevin. But the distinction between those cases and this case lies in the fact that the rights of the parties before us depended upon, and were modified by the existing agreement.
I have referred to the fact that the plaintiff’s right to hold possession, so far as it was disclosed in the complaint, was as owner. Also, to the fact that the case was not tried on the theory that such right depended on his title as sole owner. The parties chose to occupy a much larger field. It may have been thought desirable that all the matters in difference between them should be determined and put beyond contention. In that view they had the right to take the words of the complaint in a more liberal sense than the court would have given them had the question been raised. The defendants may have thought that the jury would not find the agreement in the terms stated by plaintiff. The experiment was tried, and I am of opinion that the defendants must accept the adverse result, as they might have taken the benefits if the finding had been in their favor. Only on the theory of such an election can we account for the fact that while many objections were made and exceptions taken, there was no specific request that the court should hold or instruct the jury that the plaintiff could not recover unless he owned the entire property.
•The books are full of cases, where, without holding to the terms or limitations of the pleadings, trials were had after the like liberal fashion. In Williams v. People’s Fire Ins. Co. (57 N. Y. 274), held, that where, upon a trial, evidence is given presenting a defense, not set up in the answer, and the question is litigated without objection, the defendant is entitled to the benefit, the same as if it had been regularly pleaded. In Stilwell v. Carpenter (62 N. Y. 639),* held, that the *333 question as to the plaintiff’s right to join claims of her own and claims held in her representative capacity, not having been raised on the trial, could not be raised on appeal. In Updike v. Abil (60 Barb. 15), held, that the objection that a recovery was had on grounds not alleged in the complaint, comes too late after judgment. The like principle was applied in 2 Hilt. 514; 11 Abb. Pr. 435; in 52 N. Y. 404 ; 55 Id. 72 ; Id. 98. In Tyng v. Commercial Warehouse Co., 53 N. Y. 313, Judge Johhsow says: “Indeed, it is difficult to conceive of a case in which, after a trial and decision of the controversy, as appearing on the proofs, where no question has been made during the trial in respect to their relevancy under the pleadings, it would be the duty of the court, or within its rightful authority, to deprive the party of his recovery on the ground of incompleteness, or imperfection of the pleadings.”
It is proper to observe that in many cases that rule has been freely applied,- as the pleading might have been amended had the question been raised at the trial. An amendment in this case would not have changed the cause of action. At most, there would have been a further specification of the grounds on which the taking was deemed wrongful. The action would still have been the same—the gravamen the same. I have no doubt that, if there had been occasion, the court could have ordered the amendment; and that now the complaint may be amended to conform to the proofs.
The judgment and order appealed from should be affirmed with costs.
McCue, J., dissented.

 S. C., fully reported in 2 Abb. New Cas. 238.