WILLIAM McKAY, APPELLANT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, RESPONDENT.

*Common carrier of perishable goods — delay in transportation — duty of the carrier to make prompt delivery to the connecting carrier — evidence as to means of transportation.*

Where perishable goods are delivered to a common carrier, to be transported to a place beyond its route, the provisions of the bill of lading relieving such common carrier, generally, from all responsibility for delays will not relieve it from liability for the delays occasioned by the negligence of its own agents and servants where they are not expressly specified; nor will such provision relieve it from delay in delivering the articles to the common carrier, to which they are to be delivered on the completion of their carriage on the route of the common carrier first receiving them for transportation.

It is the duty of the common carrier receiving goods under such circumstances to exercise reasonable diligence in ascertaining and taking advantage of early recognized means, if they exist, by which the articles, after arriving at the termination of the route of such carrier, may be forwarded to their ultimate destination.

On the question of such negligence evidence, showing that the custom was to ship to an intermediate port the goods received for the port to which those in question were destined, and that these goods might have been shipped at an earlier date to this intermediate port, is admissible.

APPEAL from a judgment, entered upon the decision of the court without a jury, at the Erie Circuit, on May 31, 1887, dismissing the complaint on the merits.

The action was brought to recover damages alleged to have been sustained by delay in transportation and delivery to the consignee of a quantity of potatoes shipped upon the defendant's railroad at

Buffalo, N. Y. By the bill of lading of date of April 5, 1880, the defendant " received from William McKay, in apparent good order, articles, two hundred and ninety six barrels of potatoes, one barrel of flour, brand Ionia; two barrels of potatoes, prepaid to Belfast, three hundred and sixty dollars and forty-three cents, marked William Logan, county Antrim, Ballymena, Ireland, via Belfast, care of W. H. McIllhanney, New York. As described above, contents and value unknown, to be transported by New York Central and Hudson River Railroad Company to their warehouse at New York, ready to be delivered to the party entitled to the same ; and it is expressly stipulated and agreed that the above property is transported upon the conditions indorsed hereon, which form part of this contract, and of the consideration for carrying the same, and not otherwise ; and that the company is not to be held liable for the loss of said property, or for any damages or injury to the same, or for any delay in the delivery thereof by any other carrier, cartman or freightman after the same has been loaded, ready, shipped or sent from the company's warehouse." The conditions indorsed upon this bill, so far as they had any relation to this shipment, were that the company would not be responsible for damages occasioned by delay or injury to perishable property; that it would only be liable as warehousemen after the property had been placed in their freight depot; that property consigned to any one place on the company's line of road, or to any point or place beyond its termini, would be sent forward, with as reasonable dispatch as the general business of the corporation at its warehouse within men tioned would admit, by a carrier or freightman, when there were such, known to the station agent at the warehouse, willing to receive the same unconditionally; that the company would not be liable for any damage or injury to property after it should have been sent from such warehouse or tendered to such carrier or freightman for such transportation. The plaintiff (as found by the court) then executed to the defendant a release from liability for damage to perishable property occasioned by delay from any cause or change of weather, or for damage and loss while in the company's depots. The property was, without delay, shipped and transported to the city of New York, to the care of McIllhanney, the defendant's foreign freight agent at that place, and there remained until May 4, 1880,

when it was shipped on the steamship. Stratherly, and reached Belfast on the twenty-first of that month, too late for the seed market. The potatoes were then much decayed, sprouted, etc., and of but little value. The loss occasioned by their damaged condition was the consequence of the delay in transportation to the consignee.

*Adelbert Moot,* for the appellant.

*Daniel H. McMillan,* for the respondent

BRADLEY, J. :

The undertaking of the defendant to transport the goods rested in contract, which did not, in terms, require it to take them beyond its own line, which, so far as appears, terminated at the city of New York; and, in view of the facts as found by the trial court, there was no implication that the defendant assumed to convey the property any further. No presumption that it was to do so arose from the the consignment address put upon the goods before their shipment at Buffalo. (*Root* v. *G. W. R. R. Co.,* 45 N. Y., 524; *Babcock* v. *L. S. and M. S. Ry.,* 49 id., 491; *Rawson* v. *Holland,* 59 id., 611.) The receipt by the defendant of payment of the requisite amount to pay the freight to the place of destination might, unexplained, have been a circumstance tending to show an understanding that it should transport the property the entire distance; but in view of the evidence and the fact as found that, at the request of the plaintiff, the amount of the freight by steamer was ascertained and the money taken and forwarded by the defendant to pay it for the plaintiff, was sufficient to repel any inference which might otherwise have arisen in that respect. It must be assumed that the defendant undertook to transport the goods no further than the city of New York; but the defendant assumed the duty of using reasonable diligence to deliver the property to the connecting carrier for transportation to the place of consignment. There is nothing in the bill of lading, in the conditions indorsed upon it, or in the release executed by the plaintiff, which relieved the defendant from liability for negligence in forwarding the property to the succeeding carrier.

The provisions of the contract exempting the defendant from responsibility for delays will not be taken to include a delay occasioned by the negligence of its agents and servants, as no such pur-

pose is therein expressed. (*Read* v. *Spalding*, 30 N. Y., 630; *Condict* v. *G. T. Ry. Co.*, 54 id., 500; *Lamb* v. *Camden and Amboy R. R. Co.*, 46 id., 271; *Mynard* v. *Syracuse, etc., R. R. Co.*, 71 id., 180.) But in view of the provisions of the contract in that respect, the burden was with the plaintiff to prove that the delay in transportation from New York was the result of the negligence of the defendant. (*Whitworth* v. *Erie Ry. Co.*, 87 N. Y., 413.) The potatoes were shipped to be used for seed in Ireland, of which the defendant's freight agent was advised. It was essential that they should reach their destination in time to go into the market for that purpose; they failed to do so. They were also perishable property, and when they reached there were much injured by having become sprouted and considerably decayed. The property having been received by the defendant with knowledge, on the part of its agent, of its character and of the purpose for which the shipment was designed, the defendant must be deemed chargeable with knowledge of the importance of transportation without unnecessary delay to the consignee. These potatoes probably reached New York before the tenth of April; and there is evidence to the effect that the time between there and Belfast, by steamer, was about fifteen days. This property was shipped on the steamship Stratherly, May fourth. It was conceded that she "was the first one to clear at or leave the port of New York after the 20th day of March, 1880, sailing for Belfast, Ireland; and that she left New York on the 4th day of May, 1880, and arrived at Belfast on the twenty-first day of May."

The defendant's counsel relies upon this fact as conclusive in support of the defense. And contends that this was the first vessel in the contemplation of the parties, as evidenced by the contract, that left New York, after the property arrived there, upon which the defendant was required to or properly could ship the goods. If the contract is entitled to such construction, there was no negligence resulting from the delay in forwarding the property, because when the undertaking of the carrier is to forward or transport goods by any certain means, that only can, without increased responsibility, be adopted. The use of any other may be treated as a deviation from the contract, and such forwarder be charged as an insurer. (*Galveston H. & H. R. R. Co.* v. *Allison*, 12 Am. and Eng. R. R. Cas.,

28; *Goodrich* v. *Thompson*, 44 N. Y., 324.) It does not appear that when the goods were shipped at Buffalo the parties had in view any particular steamer or line of steamships upon which the potatoes should be forwarded from New York. As represented by the bill of lading the contract was that they should go to the place of destination by way of Belfast. And the plaintiff testified that his direction to the defendant's agent was that the property go by steamer to Belfast. This direction evidently was given by him with a view to expedition, and for that purpose by way of distinguishing such means of transportation from that of a sail vessel.

The goods necessarily had to be taken there by water navigation. And the fact that they were to go to Belfast did not necessarily require that they be shipped upon a steamer which cleared at New York directly for the port of Belfast, provided there were other steam vessels by which, in the usual course of transportation, property was taken to that place from New York. There was some evidence tending to prove that steamships left New York weekly for Liverpool and Glasgow; that those for the latter place touched at Belfast on their return; that in some cases goods were transferred from Liverpool steamers to those going to Belfast; and that, by reason of the small amount of business between New York and Belfast, steam vessels did not frequently clear at the former directly for the latter place. And the plaintiff's counsel offered to prove that in April, 1880, at the time these potatoes were shipped, freight entered for Belfast was, in the course of business, shipped from New York by steamer either by Liverpool or Glasgow; that this was the way in which forwarders in New York shipped freight intended for Belfast, and was the most expeditious, and the only way in which freight of this character could be expeditiously forwarded to that place; that through rates were and could have been obtained from New York direct to Belfast by either Liverpool or Glasgow steamers; and that forwarders in New York city, doing business of this character, shipped their freight in that way universally. The defendant's objection to this evidence was sustained, and the plaintiff excepted. This evidence was admissible.

The question was whether the defendant had used due diligence in forwarding the potatoes on their way, by steamer, from New York. And it was clearly competent for the plaintiff to produce

evidence that opportunities, which came within the usual and ordinary course of business of transportation from there to Belfast, were furnished to forward this property by steam vessels from time to time before the time the defendant caused it to be forwarded. This fact, if proved, would have been entitled to consideration on the question of negligence charged against the defendant. There was no restriction, so far as appears, either in the bill of lading or direction of the plaintiff, which relieved the defendant from the duty of exercising reasonable diligence in ascertaining early recognized means, if they existed, of thus forwarding the potatoes, and in causing them to be delivered for shipment upon a steamer, by means of which they would have been taken to Belfast, whether or not it cleared directly for the latter place. For the purposes of the question arising upon the exception to the exclusion of the evidence, it must be assumed that, if permitted, the plaintiff would have proved in a proper manner the facts stated in the offer.

And for the error of rejecting the evidence so offered, the judgment should be reversed and a new trial granted, costs to abide the event.

Barker, P. J, ; Haight and Dwight, JJ., concurred.

Judgment reversed and new trial granted, costs to abide event.