HARMON H. HOWELL, Appellant, *v.* THE GRAND TRUNK RAILWAY COMPANY of Canada, Respondent.

JOHN SUTTERBY, Appellant, *v.* SAME, Respondent.

| 92h 423 |
| 61ad479 |
| 92h 423 |
| 62ad420 |
| 92h    423 |
| 74 AD³ 18 |

*Negligence — loss of baggage by fire while in possession of customs officers — stopover privilege does not include baggage — reasonable rule as to carriage of baggage.*

A rule of a railroad corporation, which provides that baggage can only be checked to the place for which the passenger holds a ticket, is a reasonable one.

The court may, on appeal, in support of a judgment treat pleadings as amended so as to conform to the facts found when this can be done without overruling a valid exception based upon a variance between the pleadings and proof, but this rule does not apply with the same force to create error and to reverse the judgment.

In an action brought to recover damages resulting from the destruction of baggage by fire, it appeared that the plaintiff purchased a ticket from Blythe, Canada, to Suspension Bridge, N. Y., and that the baggage was transported to the latter place; that upon its arrival it was taken possession of by the custom officers of the United States; that it was put by them in the custom room situated in a building belonging to the New York Central and Hudson River Railroad Company, with which the defendant had a trackage agreement; that without fault of the defendant the baggage was burned up upon the night of its arrival at Suspension Bridge; that the ticket permitted the plaintiff to stop over at an intermediate point known as London; that a rule of the company required that baggage should be checked through to the point of destination, and that when the train arrived at London the baggageman upon the train refused to put the baggage off at that station.

*Held,* that the rule was a reasonable one, and that the plaintiff could not recover; That the stop-over privilege upon the through ticket did not require the company to unload and reload the baggage at the intermediate station.

APPEAL by the plaintiffs in each of the above-entitled actions from judgments of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 23d day of November, 1894, upon the report of a referee.

*Dilworth M. Silver,* for the appellants.

*George F. Brownell,* for the respondent.

BRADLEY, J. :

On January 2, 1883, the plaintiff in each of the above-entitled actions purchased at Blythe, Canada, a ticket for passage over the defendant's railroad from that place to Suspension Bridge, N. Y., and delivered to the defendant his baggage, to be carried to the same destination. The baggage was transported to the latter place, and on the night of that day was destroyed by fire.

Prior to the fire, and on its arrival at Suspension Bridge, the baggage was taken into the possession of the customs officers of the United States, pursuant to the statute and regulations of that government relating to customs, and remained in the possession and custody of those officers in the room appropriated to such purpose at the time of the loss by fire, which destroyed the building in which the baggage then was. The property was not in the possession or under the control of the defendant at the time of the loss, nor was it in any sense the fault of the defendant that it was not so. On the arrival from Canada into the State of New York it was taken into the possession of such customs officers, as was usual, and required by the Customs and Navigation Laws of the United States and the regulations adopted by the Secretary of the Treasury pursuant to such laws. The defendant, therefore, is not liable as a common carrier for the loss, unless it may, for some cause, be attributable to its negligence. It is not claimed that the fire was chargeable to any fault on its part. The depot building to which the baggage was transferred, and in which was the customs room, was the property of the New York Central and Hudson River Railroad Company, upon whose railroad the defendant had the right of trackage.

It is, however, urged by the plaintiffs' counsel that the defendant became liable by reason of its failure to observe the directions of the plaintiffs to take the baggage from the train at the intermediate station known as London, where they stopped off over night. When they purchased their tickets at Blythe, the plaintiffs intended to stop over night at London and go forward the next day to Suspension Bridge, which they were permitted to do. They testified, and the referee, on the requests made on their behalf respectively, found that they told the defendant's agent at Blythe to check the baggage to London, which he failed to do, but checked it through to Suspension Bridge, and that on their arrival at London they requested the defendant's agents and employees to take their baggage from the train, which was refused. The agent at Blythe did not promise or consent to check the baggage to London, but checked it to the place of destination of the plaintiffs, as represented by their passage tickets. This was in accordance with the rule of the defendant, which provided that " baggagemen must see passengers' tickets before checking baggage, and baggage must only be checked to the place for which a passenger holds a ticket." As checks on baggage indicate its destination on a train, such baggage cannot, as a matter of practice, with propriety or prudence, be taken off by the employees of the railroad company and left at an intermediate station without special directions from such railroad company to that effect. When baggage has reached its place of destination, as indicated by the checks upon it, the company is at liberty to assume that the person presenting the duplicates of the checks upon such baggage is the owner of the property, and the delivery to him is justified; but a different question might arise if a person, having clandestinely obtained possession of the checks from the owner, should be permitted to take the baggage at an intermediate place or station; the rule before mentioned was a reasonable one. While the plaintiffs may not have known of its existence, they understood that the agent at Blythe did not consent to check their baggage to any place other than Suspension Bridge, and the fact that it was checked to that place furnished some reason for them to apprehend that they would be unable to have it taken off the train at London. The contract was to carry the plaintiffs and transport their baggage to Suspension Bridge. They had permission to stop over night at London and

resume their passage the next day. This interruption permitted in their passage upon the tickets did not necessarily include the baggage.

It is true that a person seeking carriage for his property has the right to prescribe the route and the manner of its transportation when more than one route and different means are open to the common carrier, and that for the consequences resulting from a failure to observe such direction the carrier is responsible. (*Goodrich* v. *Thompson*, 44 N. Y. 324; *Isaacson* v. *N. Y. C. & H. R. R. R. Co.*, 94 id. 278.) But that proposition has no essential application to the situation in the present case. The plaintiffs desired to have the baggage taken by the route on which it was transported, and the right to have it so done was derived from the contracts as represented by their tickets for a continuous passage to the place of destination. It is not seen that the mere privilege extrinsic the contracts which permitted the passengers to stop off over night at an intermediate station, and resume their passage the next day, afforded to them the right to require the company to unload and reload their baggage at such station. Our attention is called to *Pittsburgh, C. & St. L. Ry. Co.* v. *Lyon* (123 Penn. St. 140). There the company refused to sell to the defendant in error a passage ticket to Birmingham station, in the city of Pittsburgh, where the train uniformly stopped for passengers to alight, and he was required to take a ticket for the station further on, which was known as the Union depot within the city. The company's agent also declined to check his baggage to Birmingham station, and checked it to the destination mentioned in the passage ticket. The court very properly held that the rule of the company, requiring its agents to refuse to sell tickets and check baggage to the intermediate station, was unreasonable. The doctrine of that case would have been applicable to the present one, if the defendant had declined to sell to the plaintiffs passage tickets to London. This the defendant was neither requested, nor refused, to do. That case, therefore, does not seem to have any necessary application to the one at bar.

The action, however, is not founded upon any alleged default in not yielding to the request of the plaintiffs to permit their baggage to lay over at London until the following day. They by their complaints allege that the defendant received the baggage at Blythe,

Canada, to be carried from there to Suspension Bridge, in the State of New York, and that by the negligence and improper conduct of the defendant the baggage was lost. The question that the plaintiffs must rely upon the causes of action as alleged was raised at the trial by the defendant's counsel. No motions were made for leave to amend the complaints. It is now urged that the complaints may on this review be amended so as to conform the pleadings to the proofs. This might be done if it appeared that the parties had consented to try and have the actions determined upon an issue not within that alleged in the pleadings. But that, as has been observed, is not the situation. In support of a judgment the court may on review treat pleadings as though they had been amended so as to conform to the facts found, when it can be done without overruling an exception well taken upon the question of variance between the pleadings and proofs. (*Pratt* v. *H. R. R. R. Co.*, 21 N. Y. 305.) But that rule does not apply with the same force to create error and for the purpose of reversal of a judgment. The cited case of *Hudson* v. *Swan* (7 Abb. N. C. 324) was reversed. (83 N. Y. 552.)

The referee in his determination of the cases treated the actions as founded upon the causes of action alleged in the complaints. And there was no error in his conclusion that they were not sustained b-- the evidence.

The judgments should be affirmed.

LEWIS, WARD and ADAMS, JJ., concurred.

Judgments affirmed.