PARKER v. NORTH GERMAN LLOYD S. S. CO.

(Supreme Court; Appellate Division, Second Department. June 6, 1902.)

1. COMMON CARRIERS—GOODS DETAINED BY CUSTOMS OFFICERS—DESTRUCTION
   BY FIRE—LIABILITY.
      Plaintiff traveled on defendant's steamer from New York to Germany,
   and on arrival directed that his trunks be forwarded to an interior town
   in England. Defendant's agent gave a receipt stating that the trunks
   were received from such steamer "for transfer by slow freight" to plain-
   tiff, via London, to the address given by him. The agent forwarded the
   trunks in the usual way, and on their arrival in England they were
   detained at the custom house, where they were destroyed by fire. Held,
   that defendant was not responsible for the destruction of the trunks.

2. RECEIPT—VARYING BY EXTRINSIC EVIDENCE.
      Extrinsic evidence was inadmissible to vary the terms of a receipt
   issued by a common carrier and containing a contract to forward goods.

Appeal from trial term, Kings county.

Action by Charles N. Parker against the North German Lloyd
Steamship Company. From a judgment for plaintiff, defendant ap-
peals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS,
WOODWARD, and HIRSCHBERG, JJ.

Joseph Larocque, Jr. (Nelson Shipman, on the brief), for appellant.
Don R. Almy, for respondent.

HIRSCHBERG, J. The action is brought to recover the value of
two trunks and contents, which the complainant alleges that the de-
fendant received from him or from his assignor on the 9th day of July,
1900, at Bremen, in the empire of Germany, for a valuable considera-
tion, under a contract by which the defendant undertook to carry,
transfer, and deliver them to him at No. 18 Waterloo street, Hove-
Brighton, England. The evidence establishes the facts that the plain-
tiff and his wife sailed from New York to Bremen on one of the de-
fendant's steamers, the Grosser Kurfürst, on June 28, 1900, and ar-
rived at their destination on July 9th following; that one of the
trunks and contents in question belonged to the plaintiff, and the other
to his wife; that the person in charge of the defendant's baggage
room at Bremen on July 9, 1900, received the two trunks, and gave
to the plaintiff a receipt therefor, containing a contract for further dis-
position of them; that on that day the defendant delivered the trunks
to Brasch & Rothenstein, an express firm, to be transported to Bright-
on, England; that while in course of transportation to said place
said trunks were detained in England at Queensboro Pier, at the
mouth of the river Thames, for inspection by the British customs au-
thorities; that notice of their arrival was sent to the plaintiff, but that
before their removal, and while they were still in the custody of the
customs authorities, the trunks and the pier on which they lay were
destroyed by fire; and that the plaintiff's wife, before the suit was
brought, duly assigned to him her claim and cause of action. It fur-
ther appeared, either by oral evidence or written stipulation, that at
the time of this transaction there were no trans-channel steamers stop-
ping at Hove-Brighton; that the place was not a seaport; that the

person who received and receipted for the baggage at Bremen disposed of it in the usual and customary manner; that he did not promise or agree with the plaintiff to forward the trunks on any one of the defendant's steamers; that he did not represent to the plaintiff that they would not be detained by the British customs authorities; and in fact that he had no conversation at all with the plaintiff. The receipt, so far as material, is as follows:

"North German Lloyd Baggage Department, Bremen. Received from S. S. Grosser Kurfürst two trunks for transfer by slow freight to Charles N. Parker, via London, 18 Waterloo street, Hove-Brighton."

Upon this proof the learned trial justice directed a verdict in favor of the plaintiff for the agreed value of the trunks and contents, on the theory that the defendant received the trunks at Bremen under a contract to carry them to the plaintiff at Brighton, and that the liability of the defendant is accordingly that of an insurer.

I think that the theory on which the judgment was rendered does not apply to the transaction in question. The transportation of the plaintiff and his baggage on the defendant's steamer was complete when they reached Bremen, and the further engagement as to the trunks was a contract to forward them by slow freight, which the defendant fulfilled when it "transferred" them in the usual and customary way to a reliable express company for that purpose. The plaintiff had reached the end of his voyage on defendant's line, as he well knew; but, desiring to have his trunks sent to England, he delivered them to the defendant's agent for that purpose. The receipt clearly indicates that the engagement of the latter was to "transfer" them so that they would be carried to their destination by slow freight. There is nothing in the transaction or in the language of the receipt necessarily tending to indicate that the parties contemplated that the trunks would be carried to England on one of the defendant's steamers, and so delivered at 18 Waterloo street, in a nonseaport town. The contract, as between the plaintiff and the defendant, was therefore one to forward, and not to carry. The many cases cited by the learned counsel for the plaintiff have no direct application. They are chiefly cases where goods have been delivered by the owner or shipper to express companies under undoubted contracts to carry, and the disposition of the actions chiefly turns upon the effect and validity of conditions contained in the receipts designed to limit the liability of the carrier. But, aside from the general question of the defendant's liability under the terms of the receipt, I think the peril which destroyed the property was beyond any guaranty assumed. The case of Howell v. Railway Co., 92 Hun, 423, 36 N. Y. Supp. 544, seems quite decisive. There the plaintiff had purchased a ticket at Blythe, Canada, for passage over the defendant's road to Suspension Bridge, in this state, and his baggage, checked for the same destination, was destroyed by fire at the custom house in the latter place on the night of its arrival. In holding that the plaintiff could not recover the amount of his loss from the common carrier, the court said (page 424, 92 Hun., and page 544, 36 N. Y. Supp.):

"Prior to the fire, and on its arrival at Suspension Bridge, the baggage was taken into the possession of the customs officers of the United States,

pursuant to the statute and regulations of that government relating to customs, and remained in the possession and custody of those officers in the room appropriated to such purpose at the time of the loss by fire which destroyed the building in which the baggage then was. The property was not in the possession or under the control of the defendant at the time of the loss, nor was it in any sense the fault of the defendant that it was not so. On the arrival from Canada into the state of New York it was taken into the possession of such customs officers, as was usual, and required by the customs and navigation laws of the United States and the regulations adopted by the secretary of the treasury pursuant to such laws. The defendant, therefore, is not liable as a common carrier for the loss, unless it may, for some cause, be attributable to its negligence. It is not claimed that the fire was chargeable to any fault on its part."

This reasoning applies to the case at bar, and is equally applicable where the fire occurs in transit as where it occurs in the custom house at the place of destination. There is no proof of deviation and nothing tending in any way to charge the defendant, directly or indirectly, with the fire at Queensboro Pier. The parties must be presumed to have contracted with the common knowledge of the necessity for customs detention and inspection, and the burden was on the plaintiff to make provision for the passage of his property beyond the borders of the foreign territory if nondutiable. The defendant was wholly powerless to prevent its seizure and detention, and on the authority of the case cited cannot be held liable for its destruction, while in the possession of the foreign government, by a fire which it did not occasion, and which it could not, by any possible act of diligence, have prevented. The plaintiff offered some evidence, which was rejected, and which was apparently offered for the purpose of enlarging or varying the terms of the receipt. The rejection was not erroneous. Long v. Railroad Co., 50 N. Y. 76; White v. Ashton, 51 N. Y. 280; Hinckley v. Railroad Co., 56 N. Y. 429, 432. The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur.