THOMAS A. FISHER

*vs.*

THE BOSTON & MAINE RAILROAD COMPANY.

Aroostook.    Opinion December 12, 1904.

*Common Carrier.    Railroads.    Shipping Contract.    Duty and Liability
of Carrier to Shipper.*

When a common carrier has transported goods over its own lines to its ter-
minus, or to the point of intersection with a designated connecting carrier,
and is thereby unable to deliver them to the connecting carrier, without
any fault upon its part, its duty and liability as a common carrier ceases,
but the duty still rests upon the carrier, as a forwarder, to exercise reason-
able care and diligence to prevent unnecessary loss to the goods and to
save unnecessary cost to the owner in storage or transportation. Such
forwarder should exercise the same degree of care to prevent loss or unnec-
essary expense that a prudent owner would have in the same situation.

It is a general rule that where the carrier is unable to deliver the goods to the
next designated carrier, and has an opportunity to do so, it is his duty to
at once notify the shipper or consignee, and failure to give such notice
will render him liable for any loss or injury resulting therefrom.

Where the goods can be properly cared for and held until the shipper can be
communicated with, the carrier will not be justified in selecting another
route without notice to him and instructions from him. And this is true
even where there is a stipulation in the contract of shipment to the effect
that every carrier shall have the right, in case of necessity, to forward the
goods by any railroad or route between the place of shipment and the
place of designation.

On report.    Judgment for plaintiff.

Action on the case to recover the increased cost of transportation
which the plaintiff was obliged to pay on three cars of potatoes
shipped by him from Fort Fairfield, Maine, to Philadelphia, caused
by the defendant forwarding the potatoes from Boston to Phiadelphia
by a route other than that designated by the plaintiff. In addition
to the general issue, the defendant filed a brief statement alleging:

"1st. That under clause two of the contract of shipment made by the plaintiff with the defendant through the Bangor & Aroostook R. R. Co., the initial carrier and the agent in that behalf of the defendant, the defendant was specially licensed and authorized by the plaintiff, in case of necessity, to forward the potatoes described in the plaintiff's writ by any railroad or route between the point of shipment and the point to which the rate was given, to wit, Philadelphia; and the defendant was not bound to carry said potatoes by any particular train or route, or in any time for any particular market otherwise than with as reasonable dispatch as the general business of the defendant would permit. And the defendant says that on account of strikes and labor troubles, involving freight handlers and teamsters, in said Boston at the time said potatoes should have been delivered in the due course of business to said Boston & Philadelphia Steamship Company it was impossible for the defendant to deliver said potatoes to said Steamship Company.

2nd. That it was also impossible for said Steamship Company to receive and handle and forward same to Philadelphia. And it was also impossible for the defendant or said Steamship Company to form any idea of the duration of said strikes and labor troubles, or to form any idea as to when the same could be forwarded by said Steamship Company to Philadelphia.

3rd. That it was further impossible for the defendant, with its large amount of business to communicate at that time with the plaintiff.

4th. That in forwarding said potatoes by the Metropolitan Steamship line it acted, as it believed, for the best interests of the shipper, said potatoes being perishable goods and the weather during said month of March being uncertain, said Metropolitan Steamship Company affording the surest and quickest means of forwarding said potatoes to their destination."

All material facts are fully stated in the opinion.

*B. L. Fletcher*, for plaintiff.

*John B. and A. W. Madigan*, for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

WISWELL, C. J. On March 1, 1902, the Bangor & Aroostook Railroad Company received of the plaintiff a carload of potatoes to be transported over its own and connecting lines and delivered to a consignee in Philadelphia; and on March 7, it received from the plaintiff two other carloads of potatoes, consigned to the same person in Philadelphia, for the same purpose. The route designated by the shipper for these three cars was by rail to Boston, and from Boston to Philadelphia by the Boston & Philadelphia Steamship Company, this designated route being plainly shown by this language in the bill of lading, or shipping receipt, given by the initial carrier: "Route via Boston and Philadelphia Steamship Company." The same language being contained in each of the three shipping receipts. It is not claimed that there was any ambiguity whatever as to the route chosen by the shipper and thus designated in the shipping receipts. These cars were duly transported by the initial and an intermediate carrier and delivered to the defendant, a common carrier, at Portland, the point of intersection. The defendant there received these three carloads of potatoes and transported the same to its terminus in Boston, the first car arriving on March 7, and the other two on March 11, 1902.

At the time of the arrival of the last two cars in Boston a general strike of teamsters and freight handlers existed which commenced on March 10, and continued until about March 14, and this strike was of such extent that, as may be conceded, it became impossible, or, at least, impracticable by the exercise of reasonable diligence, for the defendant to transfer these potatoes and deliver them to the next designated connecting carrier, the Boston and Philadelphia Steamship Company. Thereupon the defendant, without notifying either the consignor or the consignee, either by mail, telegraph or telephone, although, as it appears, there were ample means of communication, both by mail and by wire, delivered these potatoes on March 11, to the Metropolitan Steamship Company, by which they were transported to New York, delivered to the Pennsylvania Railroad Com-

pany, and from them transported by that Company by rail to Phila-delphia where they were delivered to the consignee. The cost of transportation by this route to the plaintiff was $91.31, for the three carloads, more than it would have been if they had been transported by the route chosen by the shipper and plainly designated in the shipping receipts. The plaintiff, having paid this extra cost of trans-portation under protest, seeks to recover that amount in this action, which comes to the law court upon a report of the evidence.

Independently of any stipulation in the contract limiting its liabil-ity, the defendant would unquestionably be liable for this loss to the plaintiff caused by its failure to forward the goods by the designated route. The defendant's contract, by virtue of the acceptance of these cars with the route designated, was to transport them over its own line to Boston, and there to deliver them to the next designated con-necting carrier, and for its failure to do so, to the injury of the plain-tiff in the manner referred to, it would be liable to the plaintiff for the increased cost of transportation. *Proctor* v. *Eastern Railroad Company*, 105 Mass. 512. That the intermediate carrier is liable to the shipper for any loss which occurs through its fault, after the goods have come into its possession, and that the liability of the former carriers in the route terminates, when they have respectively transported the goods over their lines and delivered them to the next connecting carrier, is now almost universally established in this country.

But the contract of shipment between the initial carrier and the shipper contained various stipulations affecting the rights of the par-ties and limiting the liability of that corporation. These stipulations enured to the benefit of the defendant. *Morse* v. *Canadian Pacific Railway Company*, 97 Maine, 77. And it was expressly agreed in these contracts that the stipulations should be applicable to each car-rier over any portion of the route. It is also well settled in this state, as well as universally in this country, that a common carrier may by agreement limit to a reasonable extent his common law lia-bility, but not his liability for the consequences of his own negligence. *Morse* v. *Canadian Pacific Railway Company*, supra.

These stipulations, so far as they affect this case, are as follows:

"No carrier  .    .    .    .    shall be liable for any loss thereof or damage thereto, by causes beyond its control, or by floods or by fire from any cause wheresoever occurring; or by riot, strikes or stoppage of labor." "No carrier is bound to carry said property by any particular train or vessel, or in time for any particular market, or otherwise than with as reasonable dispatch as its general business will permit.  Every carrier shall have the right, in case of necessity, to forward said property by any railroad or route between the point of shipment and the point to which the rate is given."

We may assume, for the purposes of this case, that for causes beyond its control, and without any fault upon its part, the defendant could not for the few days commencing Monday, the 10th, and extending to Friday, the 14th, deliver these goods to the designated connecting carrier at Boston, and the causes affecting its inability in this respect were covered by the stipulations above referred to.  It is also undoubtedly true that at the time the goods were forwarded by another route, it was impossible to tell with any degree of certainty how long the situation caused by the strike would continue, or how soon the potatoes could be delivered to and received by the Steamship Line between Boston and Philadelphia.  There is also no question but that these stipulations, especially the one to the effect that the defendant, in case of necessity, had the right to forward the goods by any other railroad or route, were reasonable limitations.  We come then to the question whether the defendant, under the circumstances of the case in acting as a forwarder only, acted with that degree of care and diligence that the law and the situation demanded, and whether such a case of necessity existed as justified the defendant in forwarding these goods by the much more expensive route without in any way communicating with the shipper, and without giving him any opportunity to give new and different instructions in view of the exigency which existed.

In determining this question, we assume that the duty and liability of the defendant as a common carrier had ceased when these goods had been transported over its own line to its terminus in Boston, and when it was unable to deliver them to the next carrier because of the situation referred to.  *Plantation No. 4* v. *Hall*, 61 Maine, 517, but

the duty still rested upon the defendant, as a forwarder, to exercise reasonable care and diligence to prevent unnecessary loss to the goods, and to save unnecessary cost to the owner in storage or transportation. Such forwarder should exercise the same degree of care to prevent loss or unnecessary expense that a prudent owner would have in the same situation. This is a familiar principle which may be frequently found stated in the decisions. *Hooper* v. *Wells, Fargo & Company*, 27 Cal. 11, 85 Am. D. 211.

The gravamen of the plaintiff's complaint is, that this deviation in route was made by the sender without communication with him and without giving him an opportunity to give new instructions when, as claimed by him, if he had been informed of the condition existing, and had an opportunity to exercise his discretion in this situation, he could have disposed of the potatoes in Boston without any loss, and, in fact, at a profit. It is undoubtedly a general rule that where the carrier is unable to deliver the goods to the next designated carrier, and has an opportunity to do so, it is his duty to at once notify the shipper or consignee, and failure to give such notice will render him liable for any loss or injury resulting therefrom. "Where goods are thus held after failure or refusal of the connecting carrier to receive them, it is the duty of the initial carrier to at once notify the shipper or consignee, as the case may be." 6 Cyc. 484, and cases cited. "But, where the goods can be properly cared for and held until the shipper can be communicated with, the carrier will not be justified in selecting another route, without notice to him and instructions from him." *Louisville & Nashville Railroad Company* v. *Odil*, 96 Tenn. 61, 54 Am. St. R. 820. Some of the numerous cases to the same effect which might be cited are, The Convoy's Wheat, 3 Wall. 225; *Michigan Central Railroad Company* v. *Mineral Springs Manufacturing Company*, 16 Wall. 318; *Peterson* v. *Chase*, 21 Fed. R. 885; *Inman* v. *St. Louis & South Western Railroad Company*, 14 Texas Civ. App. R. 39, 37 S. W. 37; *Johnson* v. *New York Central Railroad Company*, 33 N. Y. 610; *Goodrich* v. *Thompson*, 44 N. Y. 324.

In *Regan* v. *Grand Trunk Railway*, 61 N. H. 579, a case somewhat relied upon by defendant, the carrier failed to give notice of its

inability to forward the goods by the conveyance designated, but it was expressly found that "that such notice would not have avoided the loss, and that the plaintiff suffered no injury by reason of the defendant's agent. Thereupon, the court decided that: "Neglect to notify the consignee of a change of route does not render the carrier liable for loss or damage happening from delay in the delivery of the goods, if such notice would not have avoided the injury." With which statement we entirely agree.

Applying these rules to the circumstances of this case, we think that the defendant failed to perform its duty toward the plaintiff by not giving him an opportunity to prevent, if possible, this largely excessive cost of transportation. No such exigency existed as prevented the defendant from holding the potatoes until the plaintiff could have been communicated with, and instructions received from him. One of these cars was an Eastman Heater Car and the other two were lined cars, as they are called, all supplied with means of heating. In this situation the potatoes were not of such a perishable character as required that they should be sent forward before there was time to hear from the owner, because, by the exercise of slight care, if the state of the weather had required it, the potatoes could have been kept from any injury from the frost. The arbitrary deviation from the route selected by the shipper, without awaiting instructions, was entirely unnecessary. As said by the court in *Michigan Central Railroad Company* v. *Mineral Springs Manufacturing Company*, 16 Wall. 318, "common fairness required that at least he should have been told of the condition of things there and thus left free to choose, if he saw fit, another mode of conveyance," or given an opportunity to dispose of his goods, if possible, without subjecting them to this large charge, in proportion to the value, for the transportation. And we are satisfied, from the evidence in the case, that this extra cost could have been prevented, and all loss to the plaintiff would have been avoided if this notice had been given, and if the plaintiff had had an opportunity to dispose of his property where it was.

*Judgment for plaintiff for $91.31 and interest*
*from the date of the writ.*